*Law Offices*
**MORGAN, LEWIS & BOCKIUS LLP**
**(Pennsylvania Limited Liability Partnership)**
**502 Carnegie Center**
**Princeton, NJ  08540-6241**
**609.919.6600 / 6701 (fax)**
**Rene M. Johnson**
**Joseph A. Nuccio**
**Attorneys for Defendants**
**Moody's Investors Service, Inc., and**
**Moody's Corporation**

### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PAUL BIENSTOCK,<br><br>　　　　　Plaintiff,<br><br>　　　　v.<br><br>MOODY'S INVESTORS SERVICES and MOODY'S CORPORATION,<br><br>　　　　　Defendants. | Civil Action No. 09-2858 (SHS-RLE)<br><br><br>*ELECTRONICALLY FILED* |

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS, OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

On the Brief:

René M. Johnson
Joseph A. Nuccio

## TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ........................................................................................................1

II. STATEMENT OF FACTS .........................................................................................2

III. ARGUMENT...............................................................................................................4

    A.    Plaintiff's Alleged "Whistleblowing" Is Not Protected Activity Under SOX..................................................................................................................4

        1.    The Laws Bienstock Claims Were Violated Do Not Apply To Defendants………………………………………………………………..5

        2.    The Facts As Alleged By Bienstock Do Not Constitute Fraud…………. 6

        3.    Bienstock Fails To Plead Fraud On Moody's Shareholders……………. 9

    B.    There Could Be No Retaliation Because The Decision To Terminate Plaintiff Predated His Alleged "Whistleblowing" ................................................11

IV. CONCLUSION...........................................................................................................13

# TABLE OF AUTHORITIES

## FEDERAL CASES

Allen v. Administrative Review Bd.,
514 F.3d 468 (5th Cir. 2008) ...................................................................................................8, 9

Bishop v. PCS Admin. (USA), Inc.,
No. 05-5683, 2006 WL 1460032 (N.D. Ill. May 23, 2006)............................................................6

Brass v. American Film Technologies, Inc..,
987 F.2d 142 (2d Cir. 1993)..........................................................................................................3

Collins v. Beazer Homes USA, Inc.,
334 F. Supp. 2d 1365 (N.D.Ga. 2004) ........................................................................................11

Cortec Indus., Inc. v. Sum Holding L.P..,
949 F.2d 42 (2d Cir. 1991)............................................................................................................3

Fraser v. Fiduciary Trust Co. Int'l,
417 F. Supp. 2d 310 (S.D.N.Y. 2006)......................................................................................6, 7

Getman v. Administrative Review Bd.,
No. 07-60509, 265 Fed. Appx. 317 (5th Cir. Feb. 13, 2008)......................................................11

Livingston v. Wyeth, Inc.,
520 F.3d 344 (4th Cir. 2008) .......................................................................................................7

Marano v. Dep't of Justice,
2 F.3d 1137 (Fed. Cir. 1993)......................................................................................................11

Okoampa-Ahoofe v. Johnson & Higgins,
No. 99-5820, 2000 WL 1471552 (S.D.N.Y. Sept. 29, 2000) .......................................................3

Romaneck v. Deutsche Asset Mgmt.,
No. 05-2473, 2006 WL 2385237 (N.D. Cal. Aug. 17, 2006) ...............................................11, 12

Skidmore v. ACI Worldwide, Inc.,
No. 08-0001, 2008 WL 2497442 (D. Neb. June 18, 2008).......................................................7, 9

## ADMINISTRATIVE DECISIONS

Brookman v. Levi Strauss & Co.,
ALJ Case No. 2006-SOX-36 (Apr. 27, 2007) ......................................................................11, 12

Harvey v. Safeway, Inc.,
ALJ Case No. 2004-SOX-21 (Feb. 11, 2005) .................................................................................9

Marshall v. Northrup Grumman Synoptics,
ALJ Case No. 2005-SOX-8, 2005 WL 4889013 (June 22, 2005) ...............................................6, 9

Platone v. FLYi, Inc.,
ARB Case No. 04-154 (Sept. 29, 2006) .......................................................................................6, 7

Reddy v. Medquist,
ALJ Case No. 2004-SOX-35 (June 10, 2004) .................................................................................8

Robinson v. Morgan Stanley,
ALJ Case No. 2005-SOX-44 (Mar. 26, 2007) .....................................................................8, 11, 12

Stojicevic v. Arizona-American Water Co.,
ALJ Case No. 2004-SOX-73 (Mar. 24, 2005) .................................................................................9

Townsend v. Big Dog Holdings, Inc.,
ALJ Case No. 2006-SOX-28 (Feb. 14, 2006) .................................................................................7

Tuttle v. Johnson Controls, Battery Div.,
ALJ Case No. 2004-SOX-76 (Jan. 3, 2005) ....................................................................................7

Welch v. Cardinal Bankshares Corp.,
ARB Case No. 05-064, 2007 WL 1578493 (May 31, 2007) ........................................................6, 8

Wengender v. Robert Half Int'l, Inc.,
ALJ Case No. 2005-SOX-59 (Mar. 30, 2006) .................................................................................7

**FEDERAL STATUTES**

15 U.S.C. § 80a-2(a)(20) ...................................................................................................................6

15 U.S.C. § 80a-3(a)(1) .....................................................................................................................5

15 U.S.C. § 80a-17(j) ........................................................................................................................5

18 U.S.C. § 1514A *et. seq.* ..........................................................................................................1, 5

I. **INTRODUCTION**

At its core, Plaintiff Paul Bienstock's ("Bienstock" or "Plaintiff") 26-page Complaint boils down to one simple allegation: that his former employer, Moody's Investors Service, Inc. ("MIS"), together with its corporate parent, Moody's Corporation (collectively with MIS, "Moody's"), terminated his employment because he complained about his supervisor's conduct during an internal company meeting. This allegation, however, does not constitute a basis for a claim that Moody's violated the Sarbanes-Oxley Act of 2002 ("SOX").

SOX protects whistleblowers only when they complain of activity they reasonably believe violates one of several enumerated statutes and regulations under SOX concerning fraud against their employers' shareholders. See 18 U.S.C. § 1514A(a). Here, Bienstock claims that his supervisor, Patrick Finnegan ("Finnegan"), violated SOX when he disagreed with Bienstock's recommendation that a third party's (Express Scripts) corporate family credit rating be upgraded. Bienstock cannot point to any statute or regulation that Finnegan allegedly violated, and his generic citations to the Investment Company Act and its implementing regulations, see Compl., ¶ 2, do nothing to bolster his claim as Moody's is neither an "investment company" nor an "investment adviser" governed by that statute. Furthermore, Bienstock's claim that Finnegan violated Moody's internal policies does not in any way relate to fraud against shareholders.[1] Finally, Bienstock does not (and cannot) offer any reason why the conduct alleged – even if true – constitutes fraud against *Moody's* shareholders. For all of these

---

[1] Although, for the purposes of this motion, we must take Bienstock's allegations as true, Moody's in no way concedes – and, in fact, categorically denies – that there was anything improper about the conduct of the rating committee meeting in question or that Finnegan committed any fraud or violated any company policy.

reasons, Bienstock's allegations fall far short of what constitutes protected activity under SOX, and his complaint must be dismissed.

In the alternative, Bienstock's claims should be dismissed because the decision to terminate his employment *predated* both his internal complaint *and* his supervisor's purportedly illegal conduct. Both simple logic and applicable law dictate that Bienstock's internal complaint could not possibly have affected a termination decision *that had already been made*. Furthermore, Bienstock's termination was based on his comparative performance ranking against his North America peers: dead last. That performance ranking was *also* completed well before any alleged protected activity. Bienstock's factual contentions to the contrary have no evidentiary support, will not have evidentiary support even if further discovery is conducted, and are not warranted based on the evidence exchanged by the parties during the OSHA investigation of Bienstock's original complaint. Accordingly, Bienstock has no good faith basis to assert that his termination was in any way retaliatory, and his claim should be dismissed.

As set forth above and in more detail below, Bienstock's claims are groundless. Accordingly, Defendants respectfully submit that the Court should grant their Motion to Dismiss, or, in the alternative, for Summary Judgment.

## II.   STATEMENT OF FACTS

Bienstock was employed by MIS as a Vice President-Senior Analyst in the Corporate Finance Group, from September 20, 2004 until his termination on December 12, 2007. Compl., ¶¶ 30, 46. As part of a broad restructuring effort affecting MIS employees globally, the Corporate Finance Group conducted a reduction in force (or "RIF") of its North America operations in late 2007. Affidavit of Michael Rowan ("Rowan Aff.") ¶ 4. Specifically, in November 2007, Senior Managing Director Michael Rowan ("Rowan") selected several employees in the Corporate Finance Group (including Plaintiff) to be terminated. Id. at ¶¶ 1, 4.

2

Rowan selected Plaintiff for the RIF because of his poor performance in comparison to his peers. Id. at ¶ 5. Indeed, a comparative evaluation conducted by Rowan in October 2007 that ranked all Americas Corporate Finance Group Vice President-Senior Analysts showed that Bienstock was the *lowest* ranked employee at that level employed in North America. Id. at ¶¶ 2, 3. Critically, this evaluation of Bienstock was completed well in advance of any alleged protected activity. Id. at ¶ 2; Compl. at ¶¶ 92-95.[2]

Rowan decided to terminate Bienstock in November, 2007, and his decision was communicated to MIS Human Resources and finalized no later than November 28, 2007. Rowan Aff. at ¶ 6. Rowan was solely responsible for selecting Bienstock for termination; Bienstock's supervisor Finnegan was not involved in the decision. Id. at ¶¶ 4-7. As Bienstock concedes, the rating committee meeting that forms the basis of his complaint was held on December 4, 2007. Compl., ¶¶ 48-50, 53-55. Moreover, Bienstock did not complain about the conduct of that rating committee until December 5, 2007. Compl., ¶¶ 92-95. Therefore, Rowan's decision was made six days before the rating committee described by Bienstock in his Complaint and seven days before Bienstock made his complaint to MIS Compliance. Id. at ¶ 6; see Compl., ¶¶ 48-82.

---

[2]   Though Bienstock cites his "2007 Performance Review" to bolster his claim of "stellar performance," his description thereof omits several key details. See Compl., ¶¶ 107-108. Specifically, Bienstock was told in that review to significantly improve the quality of his written research, which "sometimes contains many errors ranging from typos to factual discrepancies." Nuccio Decl. Ex. A. Moreover, the review also reveals Bienstock's propensity to fall asleep while attending meetings with issuers and credit rating committees, damaging his relationships with both issuers and peers. Id. Finally, that review was prepared by Finnegan in *January* of 2007, and thus does *not* reflect Bienstock's performance during the year leading up to his termination (and was also prepared eleven months before Bienstock's internal complaint). Id. Because Plaintiff explicitly referred to this performance review in his Complaint, it should be deemed incorporated by reference. See, e.g., Brass v. American Film Technologies, Inc., 987 F.2d 142, 150 (2d Cir. 1993); Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 48 (2d Cir. 1991); Okoampa-Ahoofe v. Johnson & Higgins, No. 99-5820, 2000 WL 1471552, *1 (S.D.N.Y. Sept. 29, 2000).

3

Ultimately, the RIF terminations were announced to affected employees on December 12, 2007, the day that Bienstock was terminated.  See Compl., ¶ 98.

## III.    ARGUMENT

### A.    Plaintiff's Alleged "Whistleblowing" Is Not Protected Activity Under SOX.

Bienstock claims he "blew the whistle" by reporting to MIS Compliance that Finnegan acted in an allegedly improper manner during the December 4 rating committee meeting. Compl., ¶¶ 90-95.  Specifically, he alleges that he met with MIS Compliance to report that Finnegan called for a re-vote at the meeting and that he displayed personal "animus" during the committee – both of which he contends violated internal company policy.  See Compl., ¶¶ 63-86. Even assuming these allegations are true as plead, they do not rise to the level of protected activity under SOX.

To adequately state a claim under SOX, Bienstock must plead facts showing that he had an objectively reasonable belief that (1) Defendants were violating an enumerated law under SOX, (2) the violation relates to fraud against shareholders, and (3) the alleged fraud was specifically against Moody's shareholders.  Bienstock's Complaint falls short on all counts.

First, under the facts as plead it was not objectively reasonable for Bienstock to believe Defendants were engaged in fraud against *any* shareholders, much less Moody's shareholders. Rather, Bienstock's complaint alleges only that Finnegan's conduct constituted a potential violation of internal company policy.  Indeed, the laws that he claims were violated do not apply to Defendants.  Finally, *even if* Bienstock's Complaint successfully alleged statutory fraud, it is not fraud against *Moody's* shareholders as required by SOX.  For all of these reasons, Bienstock's claim should be dismissed.

4

### 1. The Laws Bienstock Claims Were Violated Do Not Apply To Defendants

Bienstock's claim is not covered by SOX absent an alleged violation of the federal laws or SEC rules or regulations specifically enumerated by SOX. Those enumerated laws are certain federal mail, wire, bank and securities fraud statutes (*i.e.*, 18 U.S.C. §§ 1341, 1343, 1344 and 1348) and those rules or regulations of the SEC or provisions of federal law relating to fraud against shareholders. 15 U.S.C. §1514A(a)(1). The specific laws Bienstock identifies as relating to his alleged whistleblowing – Section 17(d) of the Investment Company Act and that Act's implementing regulations at 17 CFR §§ 270, 275, and 279, see Compl., ¶ 2 – simply do not apply to Moody's.

The only part of the cited Investment Company Act section that pertains to fraud is as follows:

> any affiliated person of or principal underwriter for a *registered investment company* or any affiliated person of an *investment adviser* of or principal underwriter for a registered investment company, to engage in any act, practice, or course of business in connection with the purchase or sale, directly or indirectly, by such person of any security held or to be acquired by such registered investment company in contravention of such rules and regulations as the Commission may adopt to define, and prescribe means reasonably necessary to prevent, such acts, practices, or courses of business as are fraudulent, deceptive or manipulative.

15 U.S.C. § 80a-17(j) (emphasis supplied). The only way this paragraph could apply to Moody's is if it was a "registered investment company" or an "investment adviser" as defined in the Investment Company Act. Nothing in Bienstock's complaint suggests that Moody's is a "registered investment company," which must be engaged primarily in the business of "investing, reinvesting, or trading in securities," "issuing face-amount certificates of the installment type," or "own[ing] or propos[ing] to acquire investment securities having a value exceeding 40 per centum of the value of [another] issuer's total assets." 15 U.S.C. § 80a-3(a)(1).

5

In fact, Moody's is not a registered investment company, nor is it an "investment adviser" under the Investment Company Act. Moreover, the Act specifically *excludes* from that definition any person or company "whose advice is furnished solely through uniform publications distributed to subscribers thereto," 15 U.S.C. § 80a-2(a)(20), which, even according to Bienstock, is precisely the business that Moody's is engaged in. See Compl. ¶ 4 (Moody's "provides research data and analytic tools for assessing credit risk and publishes market credit opinions, deal research and commentary supposedly servicing more than 9,300 customer accounts at over 2,400 institutions worldwide"). Bienstock's Complaint identifies *no* other applicable law or regulation that Finnegan's conduct supposedly violated. As SOX protects whistleblowing conduct only if it "definitively and specifically' relate[s] to [one] of the listed categories of fraud or securities violations under [15 U.S.C. §1514A]," Platone v. FLYi Inc., ARB Case No. 04-154, at 17 (Sept. 29, 2006); see also Fraser v. Fiduciary Trust Co. Int'l, 417 F. Supp. 2d 310, 322 (S.D.N.Y. 2006), Bienstock's failure to identify an applicable statutory violation is fatal. See Marshall v. Northrup Grumman Synoptics, ALJ Case No. 2005-SOX-8, 2005 WL 4889013 at *3 (June 22, 2005) (dismissing complaint when complainant did "not identify a specific law or regulation that [his supervisor] ha[d] violated"); see also Welch v. Cardinal Bankshares Corp., ARB Case No. 05-064, 2007 WL 1578493, *8 (ARB May 31, 2007).

2. **The Facts As Alleged By Bienstock Do Not Constitute Fraud**

Even if Bienstock successfully alleged a violation of the laws enumerated by SOX, his complaint still fails because the supposed improprieties he recites do not relate to shareholder fraud. As the court observed in Bishop v. PCS Admin. (USA), Inc., No. 05-5683, 2006 WL 1460032 (N.D. Ill. May 23, 2006):

> All the statutes and regulations referenced in [15 U.S.C. §1514A(a)(1)] are ones setting forth fraud. The phrase "relating to fraud against shareholders" in this provision must be read as modifying each item in

6

>the series, including "rule or regulation of the Securities and Exchange Commission."

2006 WL 1460032, *9; see also Livingston v. Wyeth, Inc., 520 F.3d 344, 352 n1 (4th Cir. 2008) (reference to "any rule or regulation of the [SEC]" in 15 U.S.C. §1514A encompasses only rules and regulations prohibiting fraud; "[t]o conclude otherwise would absurdly allow a retaliation suit for an employee's complaints about administrative missteps or inadvertent omissions"); Skidmore v. ACI Worldwide, Inc., No. 08-0001, 2008 WL 2497442, *4 (D. Neb. June 18, 2008) (federal "statutory provisions can only be implicated under a SOX whistleblower claim" if protected activity "relates to fraud against the shareholders"). Accordingly, SOX whistleblower complaints are routinely dismissed when the conduct complained of is unrelated to shareholder fraud. See, e.g., Fraser, 417 F. Supp. 2d at 322-323 (dismissing claim based on complaint that contained (1) no "allegations of conduct that would [have alerted] Defendants that [plaintiff] believed the company was violating any federal rule or law related to fraud on shareholders," and (2) "no communication . . . indicating that [plaintiff] believed the company to be violating any provision related to fraud on shareholders"); Platone, ARB Case No. 04-154 at 15, 17, 20-21 (dismissing complaints that "did not provide any information about fraud against shareholders"); Wengender v. Robert Half Int'l, Inc., ALJ Case No. 2005-SOX-59, 11 (Mar. 30, 2006) ("[f]raud is an integral element of a SOX claim, which necessarily includes an implicit element of deceit that would impact shareholders"); Townsend v. Big Dog Holdings, Inc., ALJ Case No. 2006-SOX-00028, 14 (Feb. 14, 2006) ("Protected activity under SOX is defined as reporting an employer's conduct which the employee reasonably believes constitutes a violation of the laws and regulations related to fraud against shareholders"); Tuttle v. Johnson Controls, Battery Div., ALJ Case No. 2004-SOX-00076, 3-4 (Jan. 3, 2005) (no protected activity when complaint did

7

not "address any kind of fraud or any transactions relating to securities" or "involve[] intentional deceit or result[] in a fraud against shareholders or investors").

A careful review of Bienstock's Complaint reveals that he has not plead *any* facts to suggest that he objectively, reasonably believed that Finnegan's alleged conduct related to fraud against shareholders.  See, e.g., Allen v. Administrative Review Bd., 514 F.3d 468, 477 (5th Cir. 2008) (complainant's belief of violation must be objectively reasonable); Robinson v. Morgan Stanley, 2005-SOX-44, 114 (ALJ Mar. 26, 2007) (belief must be "grounded in conditions constituting reasonably perceived violations").  As set forth in the Complaint, Finnegan's alleged "violations" consisted of:

- "obviat[ing] the regulated voting process" by calling for a "re-vote" in contravention of "Moody's established procedure and industry protocol"  (Compl. ¶¶ 67, 76, 93);

- providing "no rationale" for his vote to lower Express Scripts' rating outlook (Compl. ¶¶ 63, 81-82); and

- basing his opinion on "animus," defined as "a contentious relationship with Express Scripts' management" evidenced by Finnegan "reprimand[ing] them for not providing more confidential and non-public information regarding the profitability of their top 100 clients and other information" and considering them "not cooperative enough" in assisting MIS (Compl. ¶¶ 83-86).

None of these alleged "violations" relate to fraud on shareholders.  Rather, Bienstock's underlying complaint is that Finnegan violated Moody's internal policies regarding the voting procedures in a rating committee – either by calling for a re-vote, not adequately supporting his vote, or basing his vote on improper "animus."  Indeed, similar complaints about violations of internal company policies, rather than shareholder fraud, are routinely found *not* to be protected activity under SOX.  See, e.g., Welch, 2007 WL 1578493, at *8 (reporting alleged violation of GAAP accounting standards or inadequate internal controls is not protected activity); Reddy v.

8

Medquist, ALJ Case No. 2004-SOX-00035, at 3 (June 10, 2004) (no protected activity when "complaints concerned internal company policy as opposed to actual violations of federal law"); Marshall, 2005 WL 4889013, at *4 ("[r]aising a concern about a violation of an [internal company] ethics policy is not protected activity … [and] does not automatically mean or imply that fraud or any other illegal conduct took place"). Here, Bienstock's complaint to MIS Compliance was that Finnegan did not follow Moody's rating committee voting procedures – *not* that Finnegan was engaged in defrauding shareholders. Because Bienstock's alleged complaint was limited to an alleged violation of internal company policy, rather than fraud upon shareholders, his complaint was not protected activity under SOX and his claims should be dismissed.

        3. **Bienstock Fails To Plead Fraud On Moody's Shareholders**

Finally, to be protected by SOX a complaint must not only involve fraud against shareholders, but specifically fraud against *the employer's* shareholders. See Allen, 514 F.3d at 480 (employee's SOX claim based on employer's alleged violation of "any provision of federal law relating to fraud against shareholders" fails unless employee reasonably believes "that his or her employer acted with a mental state embracing intent to deceive, manipulate, or defraud its shareholders"); Harvey v. Safeway, Inc., ALJ Case No. 2004-SOX-21, at 31 (Feb. 11, 2005) (no protected activity when alleged conduct "would have a microscopic, if any, effect on any financial report prepared by [the Respondent] for the benefits of its shareholders"); Stojicevic v. Arizona-American Water Co., ALJ Case No. 2004-SOX-73, at 7 (Mar. 24, 2005) (no protected activity when "Complainant has not offered any proof that Respondent made false statements or misrepresentations to its shareholders and investors regarding its earnings, such that its conduct constituted fraud"); Skidmore, 2008 WL 2497442, *4 (federal "statutory provisions can only be implicated under a SOX whistleblower claim if plaintiff's disclosure of [defendant's] activity

revealed anything that relates to fraud against the [defendant's] shareholders"). Bienstock offers no conceivable way that Finnegan's alleged conduct would perpetrate such a fraud.

As already discussed, see supra, Part III.A.2, Bienstock claims that Finnegan (1) improperly called for a re-vote at the December 4, 2007 rating committee; (2) did not adequately support his vote; and (3) based his vote on improper "animus." Even if accurate, none of this conduct constitutes fraud on Moody's shareholders, or even could reasonably be expected to impact them in any way. Bienstock's Complaint offers no rationale for why a violation of Moody's internal voting protocols at a single rating committee meeting – a meeting that resulted in *no change* to the rating at issue, see Compl., ¶¶ 77-81 – could possibly be expected to impact the value of Moody's shares. Indeed, by his own admission, the "animus" attributed to Finnegan by Bienstock was a perfectly legitimate concern: Finnegan believed that Express Scripts had failed to provide MIS with the information Finnegan felt was necessary to properly evaluate their corporate family rating.

In the end, Bienstock's real complaint is nothing more than a disagreement with his supervisor's ratings analysis – a disagreement that has *no* impact on Moody's shareholders whatsoever. Bienstock's complaint therefore is not "protected activity" under SOX and his claims should be dismissed.

Because Bienstock's allegations do not constitute any covered activity (*i.e.*, a complaint based on an objectively reasonable belief that (1) Defendants violated an enumerated law under SOX; (2) the alleged violation related to fraud against shareholders; and (3) the alleged violation related specifically to fraud against Moody's shareholders), his alleged whistleblowing was not protected under SOX and his Complaint must be dismissed.

## B. There Could Be No Retaliation Because The Decision To Terminate Plaintiff Predated His Alleged "Whistleblowing"

Even if an employee engages in protected activity under SOX, that employee's subsequent termination will be unlawful only when the complainant's protected activity is a "contributing factor" in the termination. Getman v. Administrative Review Bd., 265 Fed. Appx. 317, 319 (5th Cir. Feb. 13, 2008). A contributing factor is "any factor, which alone or in combination with other factors, tends to affect in any way the outcome of the decision." Collins v. Beazer Homes USA, Inc., 334 F. Supp. 2d 1365. 1378-1379 (N.D.Ga. 2004) (quoting Marano v. Dep't of Justice, 2 F.3d 1137, 1140 (Fed. Cir. 1993)). A complainant must therefore prove that his or her alleged protected activity was *known* to the decisionmaker *prior* to the termination. See Romaneck v. Deutsche Asset Mgmt., No. 05-2473, 2006 WL 2385237, *4, *6 (N.D. Cal. Aug. 17, 2006). Furthermore, protected activity that occurs *after* an adverse employment decision obviously cannot constitute a contributing factor in that decision. See Brookman v. Levi Strauss & Co., ALJ Case No. 2006-SOX-36, at 15 (Apr. 27, 2007) (finding no retaliation because, *inter alia*, termination decision was made before claimant's complaint to SEC); Robinson, 2005-SOX-44, at 123-124 (noting that "of particular significance on the causation issue, none of the adverse performance evaluations and personnel actions by [claimant's supervisors] … were motivated by [claimant's] subsequent protected activity") (emphasis in original).

Bienstock fails to meet this standard for a very simple reason: the decision to terminate his employment was made *before* either his complaint or the activity about which he complained. Specifically, Senior Managing Director Michael Rowan decided to terminate Bienstock in November 2007, and his decision was communicated to MIS Human Resources and finalized no later than November 28, 2007 – a full six days before the rating committee meeting about which

11

Bienstock complained and seven days before he actually complained. Rowan Aff., ¶ 6; Compl., ¶¶ 48-50, 92-95. As the outcome of MIS's decision – that Bienstock would be terminated as part of a RIF – was predetermined before any alleged protected activity by Bienstock, no unlawful retaliation based on such activity could possibly have taken place. See Romaneck, 2006 WL 2385237, at *4, *6; Brookman, 2006-SOX-36 at 15; Robinson, 2005-SOX-44 at 123-124. Bienstock does not (and, indeed, cannot) allege otherwise. Similarly, Bienstock's low relative performance ranking – specifically, his status as the lowest ranking North America Vice President-Senior Analyst – that formed the basis for his selection was also determined more than a month before the rating committee meeting or Bienstock's complaint. Rowan Aff., ¶¶ 2, 3. Therefore, Bienstock has no basis to challenge either his selection for the RIF or the basis therefor, as both predated any allegedly protected conduct.

## IV. CONCLUSION

Bienstock's claims are meritless and should be dismissed. First, his complaint fails to implicate any law or regulation that actually applies to Moody's. Second, the conduct he attributes to Finnegan does not constitute shareholder fraud. Third, even if Finnegan committed the alleged fraud,[3] the effects of such fraud would not impact Moody's shareholders. Finally, the decision to terminate his employment was made well in advance of the conduct about which he complained. For all of these reasons, Defendants' Motion to Dismiss should be granted and Plaintiff's Complaint dismissed in its entirety. Alternately, should the Court construe Defendants' Motion as one for summary judgment, it should likewise be granted and Plaintiff's Complaint dismissed.

Respectfully submitted,

**Morgan, Lewis & Bockius LLP**
Attorneys for Moody's Investors Service, Inc., and Moody's Corporation

s/ René M. Johnson
René M. Johnson

Dated: May 18, 2009                Joseph A. Nuccio

---

[3] Again, Moody's takes Bienstock's allegations as true only for purposes of this motion, and denies that there was anything improper about the conduct of the rating committee meeting in question or that Finnegan committed fraud or violated any company policy.