UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------ x
                                                            :
**PAUL BIENSTOCK**,                                         :          Civ No.  09-2858 (SHS-RLE)
                                                            :
                    Plaintiff,                              :
                                                            :
                                                            :
            - against -                                     :
                                                            :
                                                            :
**MOODY'S INVESTORS SERVICES** and                          :
**MOODY'S CORPORATION**,                                    :
                                                            :
                    Defendants.                             :
                                                            :
                                                            :
------------------------------------------------------------------ x

---

| **PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION OF DEFENDANTS' MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6)** |
|---|

**S A C K   &   S A C K ,   E S Q S .**

Attorneys for Plaintiff

110 East 59th Street, 19th Floor
New York, New York 10022-2050
(212) 702-9000

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ II

PRELIMINARY STATEMENT ......................................................................................... 1

STATEMENT OF FACTS ................................................................................................ 2

ARGUMENT ..................................................................................................................... 5

I.   DEFENDANTS DO NOT MEET THE HIGH STANDARD WARRANTING DISMISSAL UNDER FRCP 12(B)(6) ............................................................................................... 5

II.  BIENSTOCK'S "WHISTLEBLOWING IS PROTECTED ACTIVITY UNDER SOX ........................................................................ 7

    A.   DEFENDANTS VIOLATED LAWS OR RULES PROTECTED BY SOX ................................................................................................................ 9

    B.   CASES CITED BY DEFENDANTS ARE SPECIFICALLY DISTINGUISHED BY THIS COURT TO BROADLY DEFINE "PROTECTED ACTIVITY" AND NOT LIMIT "PROTECTED ACTIVITY" TO "FRAUD AGAINST SHAREHOLDERS" ........................................................... 11

    C.   THE REPORTS MADE BY BIENSTOCK INVOLVE FRAUD BY DEFENDANTS AGAINST SHAREHOLDERS ............................................................. 14

III. BIENSTOCK'S TERMINATION WAS A RESULT OF HIS "WHISTLEBLOWING" AND NOT BASED ON HIS PERFORMANCE ........................................................................................ 15

CONCLUSION ................................................................................................................. 17

# <u>TABLE OF AUTHORITIES</u>

## CASES

<u>Absalom Gonzalez-Jimenez v. United States of America</u>, 2000 U.S. Dist. LEXIS
14040 (S.D.N.Y. 2000) ............................................................................................5

<u>Ashcroft v. Iqbal</u>, 129 S.Ct. 1937 (2009).............................................................6

<u>Ashcroft v. Iqbal</u>, 490 F.3d 143 (2nd Circ. 2008) ...............................................6

<u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 127 S.Ct. 1955 (2007). ...........6

<u>Bishop v. PCS Admin., (USA), Inc.</u>, No. 05 Civ 5683, 2006 WL 1460032, at *9
(N.D.Ill. May 23, 2006) ........................................................................................12

<u>Cohen v. Koenig</u>, 25 F.3d 1168 (2d Cir. 1994) ...................................................5

<u>Collins v. Beazer Homes USA, Inc.</u>, 334 F. Supp.2d 1365 (N.D.Ga. 2004).................8

<u>Conley v. Gibson</u>, 355 U.S. 41 (1957) ..................................................................5

<u>Connell v. Signoracci</u>, 153 F.3d 74 (2d Cir. 1998) ...............................................6

<u>Cosmas v. Hasset</u>, 886 F.2d 8 (2d Cir. 1989) ......................................................5

<u>Franklin R. Collins v. Beazer Homes USA, Inc.</u>, 334 F.Supp.2d 1365, 1375
(N.D.Ga.2004) .......................................................................................................7

<u>Fraser v. Fiduciary Trust Company International</u>, 417 F.Supp.2d 310, 321 (S.D.N.Y.
2006) ..................................................................................................................7, 8

<u>Gant v. Wallingford Bd. of Educ.</u>, 69 F.3d 669 (2d Cir. 1995) ......................5, 6

<u>Goldman v. Belden</u>, 754 F.2d 1059 (2d Cir. 1985)................................................6

<u>Kaible v. U.S. Computer Group</u>, 27 F. Supp. 2d 373, 1998 U.S. Dist. LEXIS 19214
(S.D.N.Y. 1998)......................................................................................................5

Kenneth Dash v. The Equitable Life Assurance Society of the United States and
Ecuicor—Equitable HCA Corp., 753 F. Supp. 1062; 1990 U.S. Dist. LEXIS 17708;
59 FairEmpl. Prac. Cas. (BNA) 685 (E.D.N.Y. 1990) .......................................................5

LaBounty v. Adler, 933 F.2d 121 (2d Cir. 1991).............................................................6

Northrop v. Hoffman of Simsbury, Inc., 134 F.3d 41 (2d Cir. 1997).............................5

O'Mahony v. Accenture, Ltd., et al., 537 F.Supp.2d 506 (S.D.N.Y. 2008). .......................9, 12, 13

Portes v. Wyeth Pharms., Inc., 2007 U.S. Dist. LEXIS 60824....................................9

Reyna v. ConAgra Foods, Inc., 506 F.Supp.2d 1363, 1381 (M.D.Ga.2007)................................12

S.E.C. v. U.S. Environmental, Inc., 155 F.3d 107 (2d Cir. 1998) ......................................5

Lerbs v. Buca Di Beppo, Inc., 2004-SOX-8, 2004 DOLSOX LEXIS 65....................................8, 9

Villager Pond, Inc. v. Town of Darien, 56 F.3d 375 (2d Cir. 1995), cert. denied, 519
U.S. 808, 117 S. Ct. 50, 136 L. Ed. 2d 14 (1996) .............................................................6

Weisman v. LeLandais, 532 F.2d 308 (2d Cir. 1976) .......................................................6

**PRELIMINARY STATEMENT**

Plaintiff, Paul Bienstock ("*Bienstock*" or "*Plaintiff*"), by his attorneys Sack & Sack Esqs., hereby respectfully submits this Memorandum of Law in opposition to Defendants' Motion to Dismiss the Complaint.  Plaintiff submits that the facts alleged in the Complaint are sufficient to state claims under §806 of the Corporate and Criminal Fraud Accountability Act, Title VIII of the Sarbanes-Oxley Act of 2002, 18 U.S.C. § 1514(a)(1) ("*SOX*").

As this Court is fully aware, the pleadings of a complaint must be liberally construed as to afford the Plaintiff the greatest benefit of doubt that a claim under SOX has been stated.  A plain reading of the detailed complaint fully sets for Mr. Bienstock's claims for retaliation following lawful complaints concerning violations of protocols and regulations by Moody's – and this is why he was terminated.  Whether the violations complained of by Mr. Beinstock were violation of the Investment Advisor's Act, mentioned only in the "Introduction" section of the Complaint and not in the "Facts" section of the Complaint, or some other violation of applicable federal law is of no consequence – the mere allegation that an applicable regulation was complained of is sufficient to state a cause of action under the Second Circuit's liberal rules with respect to pleadings.

In its Motion to Dismiss, Defendants inappropriately argue facts and circumstances not ripe for adjudication for a 12(b)(6) motion to dismiss.  Besides the fact that Defendants would like to skip discovery and jump to summary judgment reliant upon baseless assumptions in law, Defendants wrongfully skew allegations and misstate facts to prematurely seek dismissal of this action.  In its desperate attempts to seek premature adjudication of this matter, Defendants cite inapplicable legal standards governing the elements to properly state a claim under SOX.

In one instance discussed herein, Defendants cite a non-persuasive case from the Northern District of Illinois narrowly defining "protected activity" under SOX, which case is specifically broadened and distinguished by this Court!

Prevailing law does not require the stringent standards Defendants seek to impose in order to state a claim under SOX. Nevertheless, even using Defendants strict, albeit erroneous, legal applications, Plaintiff sufficiently states a claim for relief in his Complaint.

In sum, Plaintiff alleges in meticulous detail sufficient facts supporting claims for relief under the provisions of SOX. For these reasons, and for the reasons described herein, Plaintiff requests that Defendants' Motion to Dismiss the Complaint be denied in its entirety.

## STATEMENT OF FACTS

Plaintiff respectfully refers the Court to the 139 paragraph Complaint filed in this matter for a full rendition of Plaintiff's allegations. Plaintiff, however, does set forth some background facts as follows:

From September 13, 2004, through his unlawful and retaliatory termination on December 12, 2007, Bienstock was employed by Moody's as a Vice President and Senior Analyst. (See, Complaint ¶30.) As a senior analyst at Moody's, Bienstock's primary responsibility was to manage a portfolio of over 40 companies in the medical device and healthcare services sub-sector; more than *double* those of his similarly situated colleagues who were responsible for portfolio of healthcare names. (See, Complaint ¶35.)

At any time during Bienstock's employment at Moody's when he would be required to recommend an affirmation or change of a company's rating and/or outlook concerning a particular company grade rating, Bienstock would develop an extensive and thorough research

package for review by the Rating Committee to support his conclusions.  Bienstock would then present support for his recommendation in front of a Rating Committee consisting of a Rating Chair, Bienstock, the back-up analyst, the associate analyst, and other analysts who were part of his group.  (See, Complaint ¶40.)

On December 4, 2007, Bienstock presented Express Scripts, Inc. to the Rating Committee for its consideration of upgrading the company's bond rating from Ba1 to one notch above, Baa3.  The majority of the rating committee members were quite familiar with Express Scripts as one rating discussion and one Rating Committee Meeting had already been convened during October 2007.  (See, Complaint ¶48.)  After Bienstock's comprehensive, thoughtful and well-reasoned presentation concerning his recommendation of upgrading Express Scripts' rating, Bienstock's comprehensive analysis and quantitative market indicators confirmed that Bienstock's recommendation of a higher rating was justified.  (See, Complaint ¶57.)  The initial vote of the Rating Committee members concerning the upgrade with Bienstock's recommendation; "five" in *favor* of the recommendation and "two" *against* the recommendation. (See, Complaint ¶58.)

In respect of the vote that took place immediately following Bienstock's presentation, Patrick Finnegan, the Rating Committee Chair (and Bienstock's boss), was one of the two individuals voting to maintain the same rating of Ba1.  (See, Complaint ¶60.)  Finnegan immediately expressed to the Rating Committee and everyone present that, in accordance with policy, Finnegan desired to appeal the vote to Gates, the Chief Credit Officer.  (See, Complaint ¶66.)  Finnegan then sternly and shockingly proclaimed to all present at the December 4, 2007 Ratings Committee meeting, "**Express Scripts doesn't pay us [Moody's] and we**

**don't cover their issues.  They don't visit us and they don't deserve our upgrade."**  (See, Complaint ¶69.)

Finnegan immediately called for another vote, which is contrary to all ethical, company and industry regulations, protocols, standards and guidelines.    (See, Complaint ¶76.) Remarkably, in an incredible reversal, and without any further substantive discussion or presentation of additional materials or data, upon the unprecedented "re-vote", the other Rating Committee members (all of whom were subordinates of Finnegan) flip-flopped, this time voting "six" against and "one" for the ratings change for Express Scripts.  (See, Complaint ¶77).  As an experienced senior member of the team, Bienstock was both distraught and mortified by Finnegan's unlawful actions.  ***The presentation of a fully researched recommendation for Express Scripts that resulted in a majority vote in one instance was completely reversed without any research or support or foundation in violation of rules, regulations and policy in effect***.  (See, Complaint ¶87.)

The following day, on December 5, 2007, Bienstock provided the details of the preceding day's events to Scott McKelsey, Head of Compliance at Moody's.  (See, Complaint¶92.)  ***The information Bienstock provided to his supervisors regarded conduct which Bienstock reasonably believed constitutes violations of rules or regulations of the Securities Exchange Commission and/or provisions of Federal law relating to fraud against shareholders and/or banking fraud.***  (See, Complaint ¶132.)

On Wednesday, December 12, 2007, Bienstock was terminated from his gainful employment.  (See, Complaint ¶98.)  Moody's terminated Bienstock's employment because of and in retaliation for his lawful and protected acts of providing this information to managers and

government agencies and/or for filing his Complaints under 18 U.S.C. §1514A.  (See, Complaint ¶137.)

On February 4, 2008, Bienstock filed a complaint under Section 806 of the Corporate and Criminal Fraud Accountability Act of 2002, Title VII of the Sarbanes Oxley Act of 2002, 18 U.S.C.A. §1514A with OSHA.  (See, Complaint ¶125.)

## <u>A R G U M E N T</u>

## I. DEFENDANTS DO NOT MEET THE HIGH STANDARD WARRANTING DISMISSAL UNDER FRCP 12(B)(6)

As more fully described herein, Defendants do not meet the stringent standard to obtain dismissal for failure to state a claim.  <u>Kaible v. U.S. Computer Group</u>, 27 F. Supp. 2d 373, 376, 1998 U.S. Dist. LEXIS 19214 at *5 (S.D.N.Y. 1998).  On a motion to dismiss for failure to state a claim, a complaint should be dismissed only if it appears beyond doubt that the Plaintiff can prove no set of facts in support of his complaint which would entitle him to relief.  <u>S.E.C. v. U.S. Environmental, Inc.</u>, 155 F.3d 107 (2d Cir. 1998); <u>Northrop v. Hoffman of Simsbury, Inc.</u>, 134 F.3d 41 (2d Cir. 1997); <u>quoting</u>, <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46 (1957).

It is more than well-established law, that "on a Motion to Dismiss, the <u>allegations</u> <u>in</u> <u>the</u> <u>complaint</u> <u>are</u> <u>accepted</u> <u>as</u> <u>true</u>." <u>Absalom Gonzalez-Jimenez v. United States of America</u>, 2000 U.S. Dist. LEXIS 14040 (S.D.N.Y. 2000), <u>citing</u>, <u>Cohen v. Koenig</u>, 25 F.3d 1168, 1172-73 (2d Cir. 1994). <u>See</u> <u>also</u>, <u>Kenneth Dash v. The Equitable Life Assurance Society of the United States and Ecuicor—Equitable HCA Corp.</u>, 753 F. Supp. 1062; 1990 U.S. Dist. LEXIS 17708; 59 FairEmpl. Prac. Cas. (BNA) 685 (E.D.N.Y. 1990).  "In deciding a motion to dismiss, all reasonable inferences must be drawn in the plaintiff's favor." <u>Gant v. Wallingford Bd. of Educ.</u>, 69 F.3d 669, 673 (2d Cir. 1995); <u>Cosmas v. Hasset</u>, 886 F.2d 8, 11 (2d Cir. 1989).

The issue before the Court on a Rule 12(b)(6) motion "is not whether [Bienstock] will ultimately prevail, but whether [Bienstock] is entitled to offer evidence to support the claim." Villager Pond, Inc. v. Town of Darien, 56 F.3d 375, 378 (2d Cir. 1995), cert. denied, 519 U.S. 808, 117 S. Ct. 50, 136 L. Ed. 2d 14, (1996).  Even if recovery may appear remote and unlikely on the face of the pleading, that is not the test for dismissal.  Gant v. Wallingford Bd. of Educ., 69 F.3d 669, 673 (2d Cir. 1995); citing, Weisman v. LeLandais, 532 F.2d 308, 311 (2d Cir. 1976).

This honorable Court is well aware that it is not the Court's function to weigh the evidence that might be presented at a trial.  Goldman v. Belden, 754 F.2d 1059, 1067 (2d Cir. 1985)(emphasis added).  This Court must accept the allegations of the Complaint as true, and construe all reasonable inferences in his favor.  Connell v. Signoracci, 153 F.3d 74 (2d Cir. 1998); Leeds v. Meltz, 85 F.3d 51, 53 (2d Cir. 1996); LaBounty v. Adler, 933 F.2d 121, 123 (2d Cir. 1991).

In addition, to survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955 (2007).  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  Id. at 556.  Determining whether a complaint states a plausible claim for relief will be a context specific task that requires the reviewing court to draw on its judicial experience and common sense.  Ashcroft v. Iqbal, 129 S.Ct. 1937 (2009), citing Ashcroft v. Iqbal, 490 F.3d 143 (2nd Cir. 2008).  *When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.*  Id. at 1950 (emphasis added).

Accordingly, the Court MUST assume the detailed facts set forth in the Complaint as true, and in doing so, must agree that Plaintiff has plausibly stated a claim for retaliation under SOX.

## II. BIENSTOCK'S "WHISTLEBLOWING IS PROTECTED ACTIVITY UNDER SOX

Defendants' entire motion rests off an outdated (and more narrowly construed) interpretation of "protected activity" under the purview of the Sarbanes-Oxley Act.  The broad interpretation of "protected activity" most certainly includes the allegations made by Plaintiff in his Complaint, though Plaintiff is anyhow covered by SOX under Defendants' wrongful and narrow definition of "protected activity".

Section 806 of the Sarbanes-Oxley Act of 2002 ("SOX"), 18 U.S.C. § 1514A provides that:

> "[n]o company with a class of securities registered under section 12 of the [Exchange Act], or that is required to file reports under section 15(d) of the [Exchange Act], or any officer, employee, contractor, subcontractor, or agent of such company, may discharge ... or in any other manner discriminate against an employee in the terms and conditions of employment because of any lawful act done by the employee to provide information... regarding ***any conduct which the employee reasonably believes constitutes a violation of ... any rule or regulation of the [SEC], or any provision of Federal law relating to fraud against shareholders,*** when the information ... is provided to ... a person with supervisory authority over the employee."

18 U.S.C. § 1514A (emphasis added).

To assert a whistleblower claim under SOX, Bienstock "must show by a preponderance of the evidence that (1) [he] engaged in protected activity; (2) the employer knew of the protected activity; (3) [he] suffered an unfavorable personnel action; and (4) circumstances exist to suggest that the protected activity was a contributing factor to the unfavorable action."  Fraser v. Fiduciary Trust Company International, 417 F.Supp.2d 310, 321 (S.D.N.Y. 2006), citing, Franklin R. Collins v. Beazer Homes USA, Inc., 334 F.Supp.2d 1365, 1375 (N.D.Ga.2004) (citations omitted).

The only element at issue in this motion is the first element of whether Bienstock engaged in "protected activity."

A plaintiff **_need not show an actual violation of law or cite a code section_** he believes was violated in order to engage in "protected activity" under SOX.  See, also, Lerbs v. Buca Di Beppo, Inc., 2004-SOX-8, 2004 DOLSOX LEXIS 65, at *33-34 (Dep't Labor June 15, 2004) ("[I]n order for the whistleblower to be protected by [SOX], the reported information must have a certain degree of specificity [and] must state particular concerns which, at the very least, reasonably identify a respondent's conduct that the complainant believes to be illegal.") (citation omitted). Thus, "[p]rotected activity must implicate the substantive law protected in Sarbanes-Oxley 'definitively and specifically' " (June 23, 2005 Decision and Order, at 16 (citation omitted)).

Section 1514A provides protection for an employee who provides information which the employee "reasonably believes constitutes a violation" of any Security and Exchange Commission rule or regulation or "Federal law relating to fraud against shareholders." 18 U.S.C. § 1514A(a)(1).

In the case of  Fraser  v.  Fiduciary  Trust  Co.  Int'l,  417  F.Supp.2d  310,  322 (S.D.N.Y.2006), this Court wrote a decision where it was generally mentioned that "While a plaintiff need not show an actual violation of law, or cite a code section he believes was violated, general inquiries do not constitute protected activity." Fraser, 417 F.Supp.2d at 322, citing, Collins v. Beazer Homes USA, Inc., 334 F. Supp.2d 1365 (N.D.Ga. 2004)    "Rather, the 'context' of the disclosure and 'the circumstances giving rise to the communication,' if closely related to _potential_ fraud against shareholders, may be sufficient to satisfy the pleading

requirements of a [§ 1514A] claim."  Portes v. Wyeth Pharm., Inc., No 06 Civ. 2689, 2007 WL 2363356, at *4 (S.D.N.Y. Aug. 20, 2007) (quoting, Fraser, 417 F.Supp.2d at 323).

The discussion of § 1514's coverage first raised by the Court in Fraser is further discussed, defined and **broadened** by the same Court in the more analogous O'Mahony v. Accenture, Ltd., et al., 537 F.Supp.2d 506 (S.D.N.Y. 2008).

Similar to O'Mahony, the Defendants in the instant matter allege that Bienstock's SOX claims should be dismissed on the ground that Bienstock cannot show he engaged in activity protected under § 1514A.  Specifically, similar to O'Mahony, Defendants argue that the protection of § 1514A applies only to an employee's reporting of "fraud against shareholders." Defendants assert that Bienstock's claim is not covered by SOX absent an alleged violation of the federal laws or SEC rules or regulations specifically enumerated by SOX.  The Court in O'Mahony disagreed and held that the high standard argued by Defendants was not the correct standard and dismissed Defendants' motion.  Prevailing law dictates that this Court needs to do the same.

A.    DEFENDANTS VIOLATED LAWS OR RULES PROTECTED BY SOX

As discussed *supra*, a plaintiff **need not show an actual violation of law or cite a code section** he believes was violated in order to state a claim under SOX.  See, Lerbs v. Buca Di Beppo, Inc., 2004-SOX-8, 2004 DOLSOX LEXIS 65, at *33-34 (Dep't Labor June 15, 2004) ("[I]n order for the whistleblower to be protected by [SOX], the reported information must have a certain degree of specificity [and] must state particular concerns which, at the very least, reasonably identify a respondent's conduct that the complainant believes to be illegal.") (citation omitted).  Thus,

"[p]rotected activity must implicate the substantive law protected in Sarbanes-Oxley 'definitively and specifically' " (June 23, 2005 Decision and Order, at 16 (citation omitted)).

Accordingly, Mr. Bienstock did not need to articulate which laws or rules were violated by Moody's only that Moody's was in violation of laws or regulations and he was terminated in retaliation for complaining of these violations.   This is well established and plead in the Complaint.

While not required to do so at this juncture, Mr. Bienstock intends to demonstrate that Moody's violated, among other laws, Federal Regulation, 17 CFR part 240.17g-1 *et seq*. - the section governing Nationally Recognized Statistical Rating Organizations (NRSROs).

There is no dispute by Moody's that they are an NRSRO covered by this section.

In Regulation 17 CFR part 240.17g-6, as cited by Moody's, NRSROs are prohibited from:

> (1)    Conditioning or threatening to condition the issuance of a credit rating on the purchase by an obligor or issuer [or affiliate thereof] of any other services or products [of the NRSRO] . . .

> (2)    Issuing, or offering or threatening to issue, a credit rating that is not determined in accordance with the NRSRO's] established procedures and methodologies for determining credit ratings, based on whether the rated person, or an affiliate of the rated person, purchases or will purchase the credit rating or any other service or product of the [NRSRO] . . .

> (3)    Modifying, or offering or threatening to modify, a credit rating in a manner that is contrary to the [NRSRO's established procedures and methodologies for modifying credit ratings based on whether the rated person, or an affiliate of the rated person, purchases or will purchase the credit rating or any other service or product of the [NRSRO] . . .

> (4)    Issuing  or  threatening  to  issue  a  lower  credit  rating,

lowering or threatening to lower an existing credit rating, refusing to issue a credit rating, or withdrawing or threatening to withdraw a credit rating, with respect to securities or money market instruments issued by an asset pool or as part of any asset-backed or mortgage- backed securities transaction, unless all or a portion of the assets within such pool or part of such transaction also are rated by the [NRSRO], where such practice is engaged in by the [NRSRO] for an anticompetitive purpose.

Bienstock's complaints concerning Finnegan as described in detail in his Complaint fall squarely within the prohibited actions described in 17 CFR part 240.17g-6.[1]  In sum, Bienstock describes in detail how Finnegan, following an overwhelming 5-2 vote in favor of a ratings upgrade for Express Scripts, expressed his disagreement in a raving monologue about how Express Scripts is not a paying customer of Moody's – a topic that is in violation of Federal Regulations and that should never be brought up at a committee meeting because it creates a conflict of interest.

**B.      CASES CITED BY DEFENDANTS ARE SPECIFICALLY DISTINGUISHED BY THIS COURT TO BROADLY DEFINE "PROTECTED ACTIVITY" AND NOT LIMIT "PROTECTED ACTIVITY" TO "FRAUD AGAINST SHAREHOLDERS"**

Defendants mistakenly assert that Bienstock's complaints do not constitute protected activity.

In support of its position to the contrary, Defendants furiously cite cases from other non-persuasive Courts, purposely shying away from this District's controlling precedents of a broad interpretation of SOX.  (See, Def. Mem. at 6-10, citing cases from the Northern District of Illinois, the Fourth Circuit and District Court of Nebraska).   Rather, the controlling authority in this Court begs a more liberal interpretation.

---

[1] It is of no consequence that Bienstock mentions violations of the Investment Advisors Act in the "Introduction" section of the Complaint as those allegations are not enumerated in the detailed "Facts" section or discussed in the "Cause of Action" section of the Complaint.  Rather, within the "Facts" section and the "Cause of Action" section of the Complaint, Bienstock sufficiently alleges that Moody's violated laws protected by SOX.

For example, Defendants cite <u>Bishop v. PCS Admin., (USA), Inc.</u>, No. 05 Civ. 5683, 2006 WL 1460032, at *9 (N.D.Ill. May 23, 2006) for the proposition that "relating to fraud against shareholders" must be read as modifying each item in the series, including "rule or regulation of the Securities and Exchange Commission."  Def. Mem at 6-7, citing <u>Bishop v. PCS Admin., (USA), Inc.</u>, No. 05 Civ. 5683, 2006 WL 1460032, at *9 (N.D.Ill. May 23, 2006). However, ***this District*** in <u>O'Mahony v. Accenture, Ltd., et al.</u>, 537 F.Supp.2d 506 (S.D.N.Y. 2008). specifically mentioned the <u>Bishop</u> case relied upon by Defendants and broadened that interpretation to purposely protect employees such as the Plaintiff, Bienstock.

In <u>O'Mahony</u>, the Court broadly interpreted the scope of what is considered "protected activity" under SOX.  There, the Court cited that the Second Circuit has not addressed the issue of whether § 1514A limits the activity protected only to reporting conduct that involves "fraud against shareholders." The Court, in February 2008, has shed light on the interpretation of "protected activity" leaving no doubt that Bienstock falls squarely within the protections of SOX.

The <u>O'Mahony</u> Court discussed <u>Bishop</u> by noting that the few courts which have considered the issue of whether violations of the statutes enumerated in § 1514A are limited by the phrase, "fraud against shareholders" have not been consistent. <u>Compare</u> <u>Bishop v. PCS Admin., (USA), Inc.</u>, No. 05 Civ. 5683, 2006 WL 1460032, at *9 (N.D.Ill. May 23, 2006) (finding that the phrase "relating to fraud against shareholders" must be read as modifying all violations enumerated under section § 1514A) (citations omitted) *with* <u>Reyna v. ConAgra Foods, Inc.</u>, 506 F.Supp.2d 1363, 1381 (M.D.Ga.2007) (finding that § 1514A"clearly protects an employee against retaliation based upon that employee's reporting of mail fraud or wire fraud regardless of whether that fraud involves a shareholder of the company"). <u>O'Mahony</u> settled the issue of interpretation for this Court.

The standing rule in this district is that the plain language of § 1514A is **unambiguous**. See, O'Mahony at 517.

Section 1514A states, in pertinent part, that a publicly traded company may not retaliate against an employee who provides information that the employee "reasonably believes constitutes a violation of section 1341, 1343, 1344, or 1348, any rule or regulation of the Securities and Exchange Commission, or any provision of Federal law relating to fraud against shareholders." 18 U.S.C. § 1514A(a)(1).

Section 1514A contains six provisions that enumerate six specific forms of misconduct which, if reported by an employee, protect the whistleblower from employer retaliation: (1) § 1341 (mail fraud); (2) § 1343 (wire fraud); (3) 18 U.S.C. § 1344 (bank fraud); (4) 18 U.S.C. § 1348 (securities fraud); (5) any rule or regulation of the SEC; or (6) any provision of federal law relating to fraud against shareholders.

This Court in O'Mahony ruled that *any one* of the enumerated frauds were sufficient for imposing SOX protection. Specifically, the Court stated:

> "The first four provisions are statutes that, as written by Congress, are not limited to types of fraud related to SOX. By listing certain specific fraud statutes to which §1514A applies, and then separately, as indicated by the disjunctive "or", extending the reach of the whistleblower protection to violations of any provision of federal law relating to fraud against securities shareholders, §1514A clearly protects an employee against retaliation based upon the whistleblower's reporting of fraud under any of the enumerated statutes regardless of whether the misconduct relates to "shareholder fraud"."

Consequently, an employee who alleges fraud under any of the enumerated statutes is protected under § 1514A. Accordingly, Bienstock engaged in a protected activity under § 1514A when he reported that he reasonably believed that Defendants had violated rules and regulations of the Securities Exchange Commission and Federal law and 17 CFR §270, §275 and §279,

promulgated by the Securities Exchange Commission, and §17(d) of the Investment Company Act.  (See, Complaint ¶2.)  Bienstock alleges in his Complaint that in addition to the above violations, Defendants failed to lawfully establish, maintain and enforce guidelines, policies and procedures to protect supervised persons who complain about such unlawful activity in violation of the 1940 Act and the SEC Code of Ethics.  (See, Complaint ¶¶ 7-9.)

C.     **THE REPORTS MADE BY BIENSTOCK INVOLVE FRAUD BY DEFENDANTS AGAINST SHAREHOLDERS**

Notwithstanding that Bienstock is not required to allege fraud against Moody's shareholders, he alleges in his Complaint that Defendants' actions constituted fraud against shareholders.  (See, Complaint ¶132.)  Bienstock's allegations fall squarely within the definition of shareholder fraud.

The Complaint describes in detail how Finnegan, following an overwhelming 5-2 vote in favor of a ratings upgrade for Express Scripts, expressed his disagreement in a raving monologue that Express Scripts is not a paying customer of Moody's – a topic that is in direct violation of Federal Regulations and that should never be brought up at a committee meeting because it creates a conflict of interest.  In addition, Finnegan also commented on the fact that Moody's does not rate Express Scripts' credit facility.  As per Defendants' own policy, this information should not have been made during a rating committee meeting, as business issues should have no influence on the rating of a company's securities.

These violations certainly amass to fraud against shareholders in that Finnegan's actions jeopardized the legitimacy of Moody's as a company.  Any type of behavior that influenced a vote, such as Finnegan's, would cast serious doubt regarding other rating committee meetings

that took place at Moody's.   It is inconceivable that Defendants' actions do not amount to shareholder fraud.

Any argument that fraudulent actions during a rating committee meeting did not amount to shareholder fraud is unfounded and not supported by the facts set forth in the 139 paragraphs in the Complaint.  Accordingly, Bienstock's claims under SOX should be sustained.

### III.   BIENSTOCK'S TERMINATION WAS A RESULT OF HIS "WHISTLEBLOWING" AND NOT BASED ON HIS PERFORMANCE

Defendants argue that the decision to terminate Bienstock's employment was made before either his complaint or the activity about which he complained.   This is completely inappropriate in a 12(b)(6) motion as it speaks directly to an issue of fact and is directly inapposite of the allegations set forth in the Complaint, which, as discussed *supra*, must be deemed true for purposes of this motion.   Nevertheless, to support this contention, Defendants provide an affidavit by Michael Rowan ("*Rowan*"), Moody's Senior Managing Director of the Corporate Finance Group.   The affidavit alleges that the decision to terminate Bienstock's employment was made prior to the December 4, 2007 ratings committee meeting.  (See, Rowan Aff. ¶6.)  In addition, the affidavit alleges that Bienstock was selected for termination as part of a company-wide reduction in force of MIS's North American operations.  (See, Rowan Aff. ¶4.) Finally, the affidavit also alleges that Bienstock was selected for termination based upon his poor performance compared to his peers.  (See, Rowan Aff. ¶5.)

Defendants argue that because Bienstock appears on a "list" of employees slated for termination, they are absolved from liability.   This is unfounded and baseless.   On the contrary, the documentation provided by Defendants, taken together with the facts alleged in the Complaint, further supports claims that Bienstock's termination was retaliatory.

In a bad-faith attempt to create a false impression that Bienstock was part of a broader restructuring, Defendants rely upon an **unmarked**, **untitled**, and **undated** list of 33 people for allegedly made for comparative ranking.  (See, Rowan Aff. Exhibit A.)  It should be noted that Bienstock received the same grades of 3's and 4's as many of the other "similarly situated" employees received.  Yet, Bienstock is listed as ranking 32 out of 33 senior analysts without any explanation or reason as to why other employees who received the same grades were ranked higher.  Furthermore, Defendants do not provide any clear and unequivocal documentation indicating that Bienstock was slated for termination in November 2007.  The sole evidence Defendants rely upon is an undated and untitled piece of paper which, at best, shows that Bienstock received the same grades as many of his colleagues..

Defendants' argument that Bienstock's purported selection for termination was part of a broader reduction in force absolves them from any inference of retaliation is wholly untrue and misguided.  None of the documentation provided by Defendants support the contention that Bienstock was slated for termination during December 2007, prior to his lawful complaints. Even if Bienstock was slated for termination, which Plaintiff argues he was not, his lawful complaints accelerated the date of his termination – that is a textbook example of retaliation. The acceleration of Bienstock's termination following his lawful complaints still falls squarely within a violation of SOX as Bienstock has suffered an adverse employment action and was treated differently than his similarly situated peers by being discriminated in retaliation to his engagement in protected activity.

Defendants also attached Bienstock's 2006 Performance Review as evidence of his "poor" performance while at Moody's.  This performance review reinforces Bienstock's allegations in the Complaint; he was an effective senior analyst who "**has a deep**

**understanding and knowledge of all areas of the healthcare industry, which is very useful during the rating committee process for companies outside of his portfolio."**

In respect of 2006, Bienstock received a Business Rating of "3" as he attained a ranking of "3" on all six business objectives for 2006.  Bienstock also achieved a "3" ranking on 7 competencies for rating analysts and a "4" ranking on one competency for rating analysts.  As a result, it is inconceivable to conclude that he was a poor-performer.  In fact, based on the qualitative comments from his superior, Bienstock's performance was stellar.  Consequently, the 2006 Performance Review does not contain information nor evidence of any reason to terminate Bienstock's employment.

## C O N C L U S I O N

For the foregoing reasons, Plaintiff respectfully requests that this Court deny Defendants' motion to dismiss Plaintiff's Complaint.

Dated:  New York, New York
       July 2, 2009

                              Respectfully submitted,

                              SACK & SACK, ESQS.

                                   */s/ Jonathan Sack*
                              By:  _____
                                   Jonathan Sack, Esq. (JS 1835)

                                   110 East 59th Street, 19th Floor
                                   New York, New York 10022-2050
                                   Tel:    (212) 702-9000
                                   Fax:    (212) 702-9702
                                   Attorneys for Plaintiff, Paul Bienstock