*Law Offices*
**MORGAN, LEWIS & BOCKIUS LLP**
**(Pennsylvania Limited Liability Partnership)**
**502 Carnegie Center**
**Princeton, NJ  08540-6241**
**609.919.6600 / 6701 (fax)**
**Rene M. Johnson**
**Joseph A. Nuccio**
**Attorneys for Defendants**
**Moody's Investors Service, Inc., and**
**Moody's Corporation**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **PAUL BIENSTOCK,**<br><br>        **Plaintiff,**<br><br>        v.<br><br>**MOODY'S INVESTORS SERVICES and MOODY'S CORPORATION,**<br><br>        **Defendants.** | Civil Action No. 09-2858 (SHS-RLE)<br><br><br>*ELECTRONICALLY FILED* |

**DEFENDANTS' REPLY MEMORANDUM OF LAW IN SUPPORT OF THEIR**
**MOTION TO DISMISS, OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT**

On the Brief:

René M. Johnson
Joseph A. Nuccio

DB1/63483248.2

**TABLE OF CONTENTS**

                **Page**

I.     INTRODUCTION ...................................................................................................1

III.   ARGUMENT .........................................................................................................1

      A.    Because Plaintiff Admits The Statutes Referenced In The Complaint Do Not Apply To Moody's, The Complaint Must Be Dismissed ...............................1

      B.    Plaintiff's Alleged Belief That Moody's Violated 17 CFR part 240.17g-6 Is Not Objectively Reasonable..................................................................................3

      C.    SOX Only Covers Violations Of SEC Rules And Regulations That Pertain To Fraud Against Shareholders ..............................................................................5

      D.    The Violations Alleged By Plaintiff Do Not Constitute Fraud Against Moody's Shareholders ...............................................................................................7

      E.    Bienstock Suffered No Adverse Employment Action From His Alleged Whistleblowing Because He Was Already Scheduled For Termination ...............8

IV.   CONCLUSION......................................................................................................10

# TABLE OF AUTHORITIES

## FEDERAL CASES

Allen v. Administrative Review Bd.,
514 F.3d 468 (5th Cir. 2008) ...........................................................................................5

Amercian Federation of Gov't Employees, AFL-CIO Local 2152 v. Principi,
464 F.3d 1049 (9th Cir. 2006) .........................................................................................7

Ashcroft v. Iqbal,
556 U.S. ____, 129 S.Ct. 1937 (2009)..................................................................1, 9, 10

Bell Atlantic Corp. v. Twombly,
550 U.S. 544 (2007).............................................................................................1, 9, 10

Day v. Staples, Inc.,
555 F.3d 42 (1st Cir. 2009).............................................................................................3

Fraser v. Fiduciary Trust Co. Int'l,
417 F. Supp. 2d 310 (S.D.N.Y. 2006).........................................................................2, 7

Fraser v. Fiduciary Trust Co. Int'l,
No. 04-6958, June 23, 2005 Decision and Order (S.D.N.Y.) .........................................2

Johnson v. Stein Mart Inc.,
No. 06-341, 2007 WL 1796265, (M.D. Fla. June 20, 2007),
vacated and remanded on other grounds, 276 Fed. Appx. 931 (11th Cir. 2008)...........10

Livingston v. Wyeth, Inc.,
520 F.3d 344 (4th Cir. 2008) ..............................................................................6, 7, 8

Merck & Co., Inc. v. United States,
499 F.3d 1348 (Fed. Cir. 2007).......................................................................................7

O'Mahony v. Accenture, Ltd.,
537 F. Supp. 2d 506 (S.D.N.Y. 2008)....................................................................5, 6, 7

Portes v. Wyeth Pharm., Inc.,
No. 06-2689, 2007 WL 2363356 (S.D.N.Y. Aug. 20, 2007)..........................................7

Sheppard v. TCW/DW Term Trust 2000,
938 F. Supp. 171 (S.D.N.Y. 1996).................................................................................2

## ADMINISTRATIVE DECISIONS

Allen v. Stewart Enterprises, Inc.,
ARB Case No. 06-081, ALJ Case Nos. 2004-SOX-60 to 62 (July 27, 2006) ................................8

Brookman v. Levi Strauss & Co.,
ALJ Case No. 2006-SOX-36 (Apr. 27, 2007) .............................................................................10

Harvey v. Home Depot U.S.A., Inc.,
ARB Case Nos. 04-114 and 115, ALJ Case Nos. 2004-SOX-20 and 36 (June 2, 2006) ................8

Lerbs v. Buca Di Beppo, Inc.,
ALJ Case No. 2004-SOX-8, 2004 WL 5030304 (June 15, 2004) ..................................................2

Marshall v. Northrup Grumman Synoptics,
ALJ Case No. 2005-SOX-8, 2005 WL 4889013 (June 22, 2005) ..................................................3

Reed v. MCI, Inc.,
ARB Case No. 06-126, ALJ Case No. 2006-SOX-71 (Apr. 30, 2008) ..........................................8

Robinson v. Morgan Stanley,
ALJ Case No. 2005-SOX-44 (Mar. 26, 2007) ...............................................................................5

Welch v. Cardinal Bankshares Corp.,
ARB Case No. 05-064, 2007 WL 1578493 (May 31, 2007) ..........................................................3

## FEDERAL STATUTES AND REGULATIONS

17 CFR § 240.17g-6 ..................................................................................................................2, 3

15 U.S.C. § 78o-7(c)(2) ..................................................................................................................3

18 U.S.C. §§ 1341, 1343, 1344, 1348 ............................................................................................6

## OTHER CITATIONS

Remarks by Senator Leahy Upon Introduction of S.2010 in the Senate,
2002 WL 32054452 (Mar. 12, 2002) ..........................................................................................5, 6

Report by the Senate Judiciary Committee,
2002 WL 32054437 (May 6, 2002). ................................................................................................6

**I.      INTRODUCTION**

Fundamentally, Bienstock's Complaint fails to plead that he engaged in protected activity under the Sarbanes-Oxley Act ("SOX") and, therefore, should be dismissed.  Indeed, Bienstock admits that Moody's did not violate *any* of the statutes and regulations cited in the Complaint.  Second, his new theory of liability – based on regulations that appear *nowhere* in the Complaint – fails because as pleaded Bienstock could not have objectively and reasonably concluded that Moody's violated those regulations.  Third, the alleged violations do not implicate fraud against Moody's shareholders, and therefore this SOX claim predicated on SEC rules or regulations cannot survive.  Finally, Bienstock proffered nothing to contradict the undisputed record that the decision to terminate his employment was made *before* his alleged whistleblowing and therefore the termination is not connected to any alleged protected activity.  Bienstock has identified no rebuttal evidence, describes no contradictory facts, and set forth no basis for further discovery that could somehow salvage this claim.  Rather, his response consists entirely of conclusory suppositions and assumptions, which are patently insufficient to warrant the further expenditure of the Courts' or the parties' time and energy.  His Complaint must therefore be dismissed.

**II.     ARGUMENT**

    **A.     <u>Because Plaintiff Admits The Statutes Referenced In The Complaint Do Not Apply To Moody's, The Complaint Must Be Dismissed.</u>**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  <u>Ashcroft v. Iqbal</u>, 556 U.S. ____, 129 S.Ct. 1937, 1949 (2009) (citing <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)).  That claim itself must *also* be pleaded in the Complaint.  Because Bienstock's Complaint sets forth a theory of liability that Bienstock himself now admits is incorrect, it must be dismissed.

Bienstock does not and cannot dispute that the Complaint alleges Moody's violated statutes and regulations – Section 17(d) of the Investment Company Act and that Act's implementing regulations at 17 CFR §§ 270, 275, and 279, see Compl., ¶ 2 – that, in fact, simply do not apply to Moody's.  See Moving Brief, Part III.A.1.  Indeed, Bienstock tries to dismiss *his own* citation of those sections as "of no consequence."  Opposition at 1, 11 n1.  Bienstock now claims that Moody's violated 17 CFR part 240.17g-6 – a regulation that is not cited or referenced *anywhere* in the Complaint.  Opposition at 10-11.  Regardless of whether Bienstock's alleged belief that Moody's violated that regulation was objectively reasonable (which it is not – *see* Part II.A.2, *infra*), the simple and indisputable fact is that Bienstock *has not pleaded* this claim.  Plaintiffs cannot introduce new allegations of misconduct when opposing a motion to dismiss, as such "[a]llegations made outside of the complaint are not properly before the court on a motion to dismiss."  Sheppard v. TCW/DW Term Trust 2000, 938 F. Supp. 171, 178 (S.D.N.Y. 1996).

Bienstock's brazen claim that "at this juncture" (*i.e.*, the pleadings stage) he "d[oes] not need to articulate which laws or rules were violated by Moody's" is completely unfounded and contrary to established case law.  Though Bienstock cites this Court's "general[] mention[]" in Fraser v. Fiduciary Trust Co. Int'l, 417 F. Supp. 2d 310, 322 (S.D.N.Y. 2006), that "a plaintiff need not … cite a code section he believes was violated," he fails to grasp that this applies only when the plaintiff *first* "blows the whistle" to his *employer* regarding alleged wrongdoing.  See Fraser v. Fiduciary Trust Co. Int'l, Docket No. 04-6958, June 23, 2005 Decision and Order at 16 (S.D.N.Y.) ("A plaintiff is not required to have specifically identified *to his supervisor* the code section he believed was being violated") (emphasis supplied).  Similarly, the only other decision Bienstock cites – Lerbs v. Buca Di Beppo, Inc., 2004-SOX-00008, 2004 WL 5030304 (June 15, 2004) – dealt with the complainant's *internal reporting* of alleged improper activity.  See Lerbs,

2

2004 WL 5030304, at *11.  Here, the issue is *not* whether Bienstock's *internal* reporting was sufficiently specific; it is whether Bienstock's *Complaint* sufficiently pleads a SOX violation.

Per the caselaw cited in the Moving Brief, which Bienstock has not refuted or even addressed, Bienstock's Complaint must "identify a specific law or regulation" covered by SOX that Moody's allegedly violated.  Marshall v. Northrup Grumman Synoptics, ALJ Case No. 2005-SOX-8, 2005 WL 4889013 at *3 (June 22, 2005); Welch v. Cardinal Bankshares Corp., ARB Case No. 05-064, 2007 WL 1578493, *8 (ARB May 31, 2007); see also Day v. Staples, Inc., 555 F.3d 42 (1st Cir. 2009).  Bienstock has now admitted that the laws and regulations cited in the Complaint are unrelated to his case.  His Complaint must be dismissed.

    **B.**    **Plaintiff's Alleged Belief That Moody's Violated 17 CFR part 240.17g-6 Is Not Objectively Reasonable.**

In his Opposition, Bienstock tries to salvage his faulty Complaint by suggesting that Moody's violated 17 CFR part 240.17g-6, which pertains to Nationally Recognized Statistical Rating Organizations ("NRSROs") such as Moody's.  Those regulations, however, do not address the minutiae of how individual credit rating committee meetings should be conducted. In fact, the Credit Rating Agency Reform Act specifically prohibited the Securities and Exchange Commission ("SEC"), which adopted the rules implementing the Act, from regulating "the substance of credit ratings or the procedures and methodologies by which" the credit ratings are determined.  15 U.S.C. § 78o-7(c)(2).  Conduct of rating committees is precisely the type of procedural element of the rating process that is outside the purview of the regulations.  Rather, as prescribed by the Act, the regulations enacted by the SEC are aimed at identifying and managing conflicts of interest, protecting confidential information, and prohibiting certain "unfair, coercive, or abusive practices," including modifying or threatening to modify a credit rating unless the issuer purchases services or products from the NRSRO.  See 17 CFR part 240.17g-1

*et. seq.* Even taking Bienstock's allegations as true, it is not objectively reasonable for him to have concluded that Moody's engaged in such activity. His Complaint must thus be dismissed.

Bienstock's sweeping assertion that his Complaint "describes in detail how Finnegan … expressed his disagreement [with Bienstock's recommendation] in a raving monologue about how Express Scripts is not a paying customer of Moody's," Opposition at 11, blithely ignores the *actual* story told by his own Complaint. In pertinent part, Bienstock alleges:[1]

- In June 2005, Finnegan "blatantly reprimanded [Express Scripts] for not providing more confidential and non-public information regarding the profitability of their top 100 clients and other information." Compl., ¶ 85.

- Finnegan "felt that Express Scripts was 'not cooperative enough' in assisting Moody's during the ratings process." Compl., ¶ 86.

- At the December 4, 2007 Ratings Committee meeting, Bienstock responded to Finnegan's vote against his proposed ratings increase for Express Scripts by "publicly ask[ing] Finnegan why he did not vote for the ratings increase." Compl., ¶ 66. Finnegan replied that Express Scripts "did not deserve an upgrade." Compl., ¶ 68.

- According to Bienstock, Finnegan then said, "Express Scripts doesn't pay us and we don't cover their issues. *They don't visit us* and they don't deserve our upgrade." Compl., ¶ 69 (emphasis supplied). This is the *only* comment attributed to Finnegan regarding whether Express Scripts was a "paying customer" of Moody's.

- When Bienstock replied that "our upgrade considerations have nothing to do with whether or not we receive business from the companies we follow," Finnegan *agreed*, saying "*Yes*," before continuing "but they haven't come in to present their current case." Compl., ¶¶ 71, 72.

- Bienstock's response – that Express Scripts had "call[ed] Moody's on a regular basis over the past several months" – did not alter the fact that Express Scripts had last visited Moody's a full year before the December 2007 meeting. Compl., ¶¶ 71, 73.

Bienstock's Complaint simply does not allege a "raving monologue" by Finnegan "about how Express Scripts is not a paying customer of Moody's." Rather, Bienstock alleges Finnegan made *one comment* on that subject, and then immediately *agreed* with Bienstock that whether

---

[1] Although the allegations in the complaint must be taken as true for purposes of this motion to dismiss, Moody's vehemently denies Bienstock's version of events.

4

Express Scripts was a "paying customer" was irrelevant to the ratings analysis. Instead, Finnegan explained the real problem: Moody's lacked sufficient *information* needed to determine whether an upgrade was warranted at that time. See Compl., ¶¶ 85, 86. Accordingly, the only objectively reasonable interpretation of Finnegan's alleged actions was that he objected to upgrading Express Scripts' rating at that time because he did not have adequate information on which to base the upgrade – *not* that Finnegan was hoping to somehow extort money from Express Scripts. Indeed, Bienstock alleges *no* contact or communications by Moody's that *actually violates* the regulation – even Bienstock does not allege that *anyone* at Moody's *ever* made any statement to Express Scripts threatening to modify its credit rating if Express Scripts did not pay for a rating. Therefore, because Bienstock's allegations (even if true) do not establish that his professed belief was objective and reasonable, his claims fail and his Complaint must be dismissed. See, e.g., Allen v. Administrative Review Bd., 514 F.3d 468, 477 (5th Cir. 2008); Robinson v. Morgan Stanley, 2005-SOX-44, 114 (ALJ Mar. 26, 2007)

    **C.**    **SOX Only Covers Violations Of SEC Rules And Regulations That Pertain To Fraud Against Shareholders.**

Bienstock claims that *any* alleged violation of *any* "rule or regulation of the SEC" constitutes protected activity under SOX. This position is flatly contradicted by both applicable case law and the legislative history of SOX itself. The one case Bienstock cites, O'Mahony v. Accenture, Ltd., 537 F. Supp. 2d 506 (S.D.N.Y. 2008), is inapposite because it does not involve "rules or regulations of the SEC" *at all*. Bienstock's stretched interpretation of O'Mahony misrepresents that decision and flies in the face of well-established precedent.

SOX's legislative history is crystal clear: its whistleblower provisions are designed to protect *investors* (*i.e.*, shareholders) against *fraud*. When SOX was introduced in the Senate, Senator Patrick Leahy remarked that SOX "provides tools that will improve the ability of

5

investigators and regulators to collect and preserve evidence *which proves fraud*…[so] that those who destroy evidence *of fraud* are punished." Remarks by Mr. Leahy Upon Introduction of S. 2010 in the Senate, 2002 WL 32054452, *2 (Mar. 12, 2002) (emphasis supplied). The Senate Judiciary Committee agreed, noting in its May 6, 2002 Report that the SOX whistleblower protection provisions were needed to protect "employees of publicly traded companies who blow the whistle *on fraud* and *protect investors*," and "specifically protect [whistleblowers] when they take lawful acts to disclose information or otherwise assist … in detecting and stopping *fraud*." 2002 WL 32054437, *7, *9 (emphasis supplied). Nowhere in the history of SOX is there any hint that its whistleblower provisions cover *any and all* rules or regulations promulgated by the SEC. Such an interpretation "would absurdly allow a retaliation suit for an employee's complaints about administrative missteps or inadvertent omissions from filing statements." Livingston v. Wyeth, Inc., 520 F.3d 344, 351 n.1 (4th Cir. 2008). The many cases already cited by Moody's (which Bienstock does not even address) provide additional support for rejecting his overly broad interpretation. See Moody's Brief in Support of Motion to Dismiss at 6-7.

Bienstock misconstrues the one case he cites in opposition, O'Mahony v. Accenture, Ltd., 537 F. Supp. 2d 506 (S.D.N.Y. 2008). At issue in O'Mahony was whether alleged violations of 18 U.S.C. §§ 1341 and 1343 – two of the statutes *specifically enumerated*[2] in SOX – had to involve fraud *against shareholders* to be protected under SOX. See O'Mahony, 537 F. Supp. 2d at 508, 516. The Court concluded that SOX protects "against retaliation based upon the whistleblower's *reporting of fraud* under any of the *enumerated statutes* regardless of whether the misconduct relates to 'shareholder' fraud." Id. at 517 (emphasis supplied). The Court noted

---

[2] The four enumerated statutes concern mail fraud, wire fraud, bank fraud, and securities fraud, respectively. See 18 U.S.C. §§ 1341, 1343, 1344, 1348. Bienstock has not alleged that Moody's violated any of those statutes.

6

that the four enumerated statutes "are not limited to types of fraud related to SOX" and that "it [does not] lead to an unreasonable result to hold that an employee *who alleges fraud* under any of the enumerated statutes is protected under [SOX]."  Id.  The court's holding was therefore limited to (1) allegations of *fraud* (2) arising under the four SOX-enumerated statutes.  That court did *not* decide whether alleged violations of SEC rules or regulations could be SOX-protected in the absence of fraud against shareholders (or even fraud of any kind).

Even if the O'Mahony court had considered whether violations of SEC rules/regulations must implicate fraud against shareholders to be SOX-protected, it would likely have *agreed* based on the legislative history and case law showing that this was Congress's intent.[3]  See id. at 517 (noting lack of "evidence that Congress intended the phrase 'relating to fraud against shareholders'" to apply to enumerated statutes); Livingston, 520 F.3d at 351 n.1 (to hold otherwise "would absurdly allow a retaliation suit for an employee's complaints about administrative missteps or inadvertent omissions").  Bienstock cannot rebut the mountain of legislative and judicial evidence that violations of SEC rules/regulations are not SOX-covered unless they implicate shareholder fraud.  His Complaint does not, and must be dismissed.

**D.     The Violations Alleged By Plaintiff Do Not Constitute Fraud Against Moody's Shareholders.**

Bienstock's alleged whistleblowing is not covered by SOX because it is not "*closely related* to potential fraud against shareholders."  Portes v. Wyeth Pharm., Inc., No. 06-2689, 2007 WL 2363356, *4 (S.D.N.Y. Aug. 20, 2007); see also Fraser, 417 F. Supp. 2d 310 (alleged whistleblowing must "implicate the substantive law protected in Sarbanes-Oxley 'definitively

---

[3]     The "last antecedent" doctrine cited in O'Mahony cannot overcome evidence of legislative intent.  See American Federation of Government Employees, AFL-CIO Local 2152 v. Principi, 464 F.3d 1049, 1055 (9th Cir. 2006); Merck & Co., Inc. v. United States, 499 F.3d 1348, 1354 (Fed. Cir. 2007); O'Mahony, 537 F. Supp. 2d at 517 ("[This] rule 'is not absolute and can assuredly be overcome by other indicia of meaning").

7

and specifically'"). Instead, Bienstock relies on a series of assumptions and unexplained logical leaps: (1) that Finnegan's actions at the December 4, 2007 meeting "create[d] a conflict of interest;" (2) that those actions "influenced [the] vote" at that meeting; (3) that this "would cast serious doubt regarding other rating committee meetings;" (4) that this "jeopardized the legitimacy of Moody's as a company;" and (5) that this "certainly amass[es] [sic] to fraud against shareholders."[4] Opposition at 14-15. Such "speculative, multi-step reasoning" cannot constitute an adequate SOX claim, and thus Bienstock's claim must be dismissed. See Livingston v. Wyeth, Inc., 520 F.3d 344 (4th Cir. 2008); see also Reed v. MCI, Inc., ARB No. 06-126, ALJ No. 2006-SOX-71 (Apr. 30, 2008) ("Speculation or a mere possibility that shareholders would be defrauded because [of alleged activity] does not satisfy the reasonable belief requirement"); Harvey v. Home Depot U.S.A., Inc., ARB Nos. 04-114 and 115, ALJ Nos. 2004-SOX-20 and 36 (June 2, 2006) ("a mere possibility that a challenged practice could adversely affect the financial condition of a corporation…is not enough"); Allen v. Stewart Enterprises, Inc., ARB No. 06-081, ALJ Nos. 2004-SOX-60 to 62 (July 27, 2006) (same).

### E. **Bienstock Suffered No Adverse Employment Action From His Alleged Whistleblowing Because He Was Already Scheduled For Termination**

In any event, Bienstock's Complaint must be dismissed because the decision to terminate his employment predated his internal complaint and the activity about which he complained. See Moving Brief at 11-12. Though Bienstock suggests this "is directly inapposite [sic] of the allegations set forth in the Complaint," Bienstock forgets that his Complaint is notably *vacant* of allegations pertaining to his actual termination, aside from purely legal conclusions. See, e.g., Complaint at ¶ 100 ("Bienstock's firing was done in bad faith"), ¶ 101 ("Bienstock's firing is in

---

[4] Bienstock implicitly concedes that "fraud against shareholders" in the SOX context specifically means fraud against *the employer's* shareholders. See Moving Brief, Part III.A.3. Bienstock's Opposition does not rebut or even mention this point.

8

obvious retaliation for [his internal complaint]"). Such "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" and the Court is not "bound to accept [them] as true." Iqbal, at 1949 (citing Twombly, 550 U.S. at 555).

Furthermore, Bienstock fails utterly to dispute the evidence presented by Moody's. As a threshold matter, Bienstock's Opposition takes *no* issue with the sworn testimony set forth in Michael Rowan's Affidavit, and thus all statements therein must be accepted as true. Bienstock merely attacks the document *attached* to the affidavit, claiming that it does not "clear[ly] and unequivocal[ly] … indicat[e] that Bienstock was slated for termination in November 2007." Opposition at 16. Bienstock ignores Rowan's *testimony*, which provides that "clear and unequivocal" indication; the document, as explained by Rowan, shows the *performance rankings* that formed the basis of Rowan's November 2007 termination decision. Bienstock also does not address the severe performance problems cited in his 2007 Performance Review, including factual errors in his written work and his propensity to fall asleep while attending meetings with issuers and during credit rating committees.[5] See Moving Brief at 3, n2. Bienstock has identified no need for cross-examination on these topics and no evidence contrary to that proffered by Moody's. Indeed, the parties have already exchanged volumes of documents and information during OSHA's investigation of Bienstock's original complaint. See Compl., ¶ 125. If any facts supported Bienstock's theory, they would have appeared long before now.

Finally, Bienstock's claim that "his lawful complaints accelerated the date of his termination – [constituting] a textbook example of retaliation" is wholly unsupported. Opposition at 16. Bienstock cites no authority for this proposition, and with good reason:

---

[5] These performance problems are undisputed. Bienstock's Opposition does no more than selectively cite allegedly positive and neutral statements in his performance review. Unfortunately for Bienstock, ignoring unfavorable evidence does not make it go away.

9

applicable case law holds the exact opposite.  See Johnson v. Stein Mart Inc., No. 06-341, 2007 WL 1796265, *4 (M.D. Fla. June 20, 2007), vacated and remanded on other grounds, 276 Fed. Appx. 931 (11th Cir. 2008) (complaint made after being placed on "final warning" status was not a contributing factor); Brookman v. Levi Strauss & Co., ALJ Case No. 2006-SOX-36 (Apr. 27, 2007) (complaint made after termination decision was not a contributing factor).  In any event, Bienstock has no proof and has alleged no facts (*e.g.*, his supposed "original" termination date before it was "accelerated") to support this claim, rendering it yet another "threadbare recital … supported by mere conclusory statements" that the Court should not accept as true.  See Iqbal, at 1949 (citing Twombly, 550 U.S. at 555).

Bienstock has not rebutted Moody's arguments, has alleged no facts sufficient to justify proceeding with discovery, and has identified no separate need for discovery beyond the facts pleaded.  Accordingly, his claims should be dismissed.

## III.   CONCLUSION

Bienstock's Complaint must be dismissed because he has abandoned its allegations.  His new claims are likewise meritless because they are not objectively reasonable and still do not constitute shareholder fraud – a necessary prerequisite of any SOX claim based on SEC rules or regulations.  Finally, he has failed to rebut Moody's argument that the decision to terminate his employment was made well in advance of the conduct about which he complained.  For all of these reasons, Defendants' Motion to Dismiss should be granted and Plaintiff's Complaint dismissed in its entirety.  Alternately, should the Court construe Defendants' Motion as one for summary judgment, it should likewise be granted and Plaintiff's Complaint dismissed.

                                      Respectfully submitted,

                                      **Morgan, Lewis & Bockius LLP**
                                      Attorneys for Moody's Investors Service, Inc., and Moody's Corporation

                                      s/ Joseph A. Nuccio
                                      René M. Johnson
Dated:  August 6, 2009               Joseph A. Nuccio