*Law Offices*
**MORGAN, LEWIS & BOCKIUS LLP**
**(Pennsylvania Limited Liability Partnership)**
**502 Carnegie Center**
**Princeton, NJ 08540-6241**
**609.919.6600 / 6701 (fax)**
**Rene M. Johnson**
**Joseph A. Nuccio**
**Attorneys for Defendants**
**Moody's Investors Service, Inc., and**
**Moody's Corporation**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **PAUL BIENSTOCK,**<br><br>        **Plaintiff,**<br><br>        v.<br><br>**MOODY'S INVESTORS SERVICES and**<br>**MOODY'S CORPORATION,**<br><br>        **Defendants.** | **Civil Action No. 09-2858 (SHS-RLE)**<br><br>**ANSWER AND SEPARATE DEFENSES OF DEFENDANTS MOODY'S INVESTORS SERVICE, INC., AND MOODY'S CORPORATION** |

Defendants, Moody's Investors Service, Inc. (improperly identified in the caption as "Moody's Investors Services" and hereinafter "MIS"), and Moody's Corporation (hereinafter "Moody's," and collectively with MIS, "Defendants"), by and through their attorneys, Morgan, Lewis & Bockius LLP, hereby answers the Complaint of Plaintiff, Paul Bienstock ("Plaintiff"), in accordance with the numbered paragraphs thereof, as follows:

**NATURE OF THE ACTION**

1.      The allegations of this paragraph constitute conclusions of law to which no responsive pleading is required. Insofar as a responsive pleading is required, Defendants deny the allegations of this paragraph except admit that Plaintiff purports to bring a retaliatory

termination claim under the Sarbanes-Oxley Act of 2002 ("SOX"). Defendants specifically deny that Plaintiff is entitled to any relief under SOX.

2.      Denied.

3.      Defendants admit that MIS is a subsidiary of Moody's and that the MIS website states that MIS "is among the world's most respected and widely utilized sources for credit ratings, research and risk analysis," and that MIS's "commitment and expertise contribute to stable, transparent and integrated financial markets, protecting the integrity of credit." To the extent the allegations in paragraph 3 of the Complaint are inconsistent with this statement, they are denied.

4.      Defendants admit that the MIS website states that MIS "provides research data and analytic tools for assessing credit risk, and publishes market-leading credit opinions, deal research and commentary, serving more than 9,300 customer accounts at some 2,400 institutions around the globe." To the extent the allegations in paragraph 4 of the Complaint are inconsistent with this statement, they are denied.

5.      Admitted in part, denied in part. Defendants admit that the MIS website states that MIS's "independence and integrity have earned us the trust of capital market participants worldwide." The remaining allegations of paragraph 5 of the Complaint are denied.

6.      Admitted in part, denied in part. Defendants admit that Plaintiff made a complaint to Moody's Compliance Department. The remaining allegations of paragraph 6 of the Complaint are denied.

7.      To the extent that paragraph 7 of the Complaint refers to documents, those documents speak for themselves. To the extent that the allegations of paragraph 7 misconstrue, mischaracterize, or misstate the content of those documents, they are denied.

8.      Denied.

9.      Denied.

10.     Denied.

11.     Admitted in part, denied in part.  Defendants admit that Plaintiff demanded additional compensation subsequent to his termination, but deny that Plaintiff is entitled to any such additional compensation.

12.     Denied.

13.     Denied.

## JURISDICTION, VENUE AND CHOICE OF LAW

14.     The allegations of this paragraph constitute conclusions of law to which no responsive pleading is required.  Insofar as a responsive pleading is required, Defendants deny the allegations of this paragraph except admit that Plaintiff purports to invoke the Court's jurisdiction pursuant to the statutes cited.

15.     To the extent that paragraph 15 of the Complaint refers to documents, those documents speak for themselves.  To the extent that the allegations of paragraph 15 misconstrue, mischaracterize, or misstate the content of those documents, they are denied.  The allegations of this paragraph regarding whether MIS is "subject to the provisions of SOX" constitute conclusions of law to which no responsive pleading is required.  Insofar as a responsive pleading is required, Defendants deny such allegations except admit that MIS is a subsidiary of Moody's.

16.     To the extent that paragraph 16 of the Complaint refers to documents, those documents speak for themselves.  To the extent that the allegations of paragraph 16 misconstrue, mischaracterize, or misstate the content of those documents, they are denied.

3

17.     The allegations of this paragraph constitute conclusions of law to which no responsive pleading is required.  Insofar as a responsive pleading is required, these allegations are denied.

18.     The allegations of this paragraph constitute conclusions of law to which no responsive pleading is required.  Insofar as a responsive pleading is required, Defendants deny the allegations of this paragraph except admit that Plaintiff purports to invoke venue in this Court pursuant to the statutes cited.

19.     The allegations of this paragraph constitute conclusions of law to which no responsive pleading is required.  Insofar as a responsive pleading is required, Defendants deny the allegations of this paragraph except admit that Plaintiff purports to invoke the Court's jurisdiction over "Bienstock's state law claims" pursuant to 28 U.S.C. § 1367.  Defendants deny that Bienstock has set forth any such claims.

## FACTUAL ALLEGATIONS

20.     The allegations of this paragraph are vague and ambiguous and are therefore denied.

21.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 21 of the Complaint.

22.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 22 of the Complaint.

23.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 23 of the Complaint.

24.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 24 of the Complaint.

25.       Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 25 of the Complaint.

26.       Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 26 of the Complaint.

27.       Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 27 of the Complaint.

28.       Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 28 of the Complaint.

29.       Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 29 of the Complaint.

30.       Admitted in part, denied in part.  Defendants admit that Bienstock was employed by MIS as a Vice President-Senior Analyst from September 20, 2004, to December 12, 2007.  The remaining allegations in paragraph 30 of the Complaint are denied.

31.       Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 31 of the Complaint.

32.       The allegations of paragraph 32 of the Complaint are vague and ambiguous and are therefore denied.

33.       Admitted in part, denied in part.  Defendants admit that Plaintiff's responsibilities at MIS included meeting with management of issuers in his portfolio.  To the extent the allegations of paragraph 33 of the Complaint are inconsistent with this statement, they are denied.  Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 33 of the Complaint.

34.       Admitted in part, denied in part.  Defendants admit that Plaintiff's responsibilities at MIS included researching, preparing, and presenting credit rating recommendations and building and maintaining relationships with and making presentations to investors and issuers.   To the extent the allegations of paragraph 34 of the Complaint are inconsistent with this statement, they are denied.  Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegation that Plaintiff was "quite comfortable" discharging these responsibilities, as set forth in paragraph 34 of the Complaint.

35.       Denied.

36.       Admitted in part, denied in part.  Defendants admit that Plaintiff's responsibilities varied with respect to each company in his portfolio and could include preparing corporate family ratings and/or preparing credit rating recommendations for particular debt instruments issued by those companies.  The remaining allegations of paragraph 36 of the Complaint are denied.

37.       Denied.

38.       Defendants admit that Plaintiff's portfolio changed over time and included various healthcare, medical devices, and pharmaceutical companies.  To the extent the allegations of paragraph 38 of the Complaint are inconsistent with this statement, they are denied.

39.       Defendants admit that Quest Diagnostics and Medco Health Solutions conducted acquisitions during the course of Plaintiff's employment with MIS.  The allegation that these acquisitions caused those companies to "gr[ow] much larger, diverse and complex" is vague and ambiguous and therefore denied.  Defendants are without knowledge or information

sufficient to form a belief as to the truth of the remaining allegations in paragraph 39 of the Complaint.

40.     Defendants admit that analysts in Plaintiff's group recommending that a company's outlook and/or rating be changed or affirmed would generally convene a credit rating committee meeting, provide attendees with a memorandum regarding the proposed change or affirmation (including supporting research) prior to the meeting, and present to the committee members the rationale for the proposed change or affirmation.  To the extent the allegations of paragraph 40 of the Complaint are inconsistent with this statement, they are denied.  The allegation that "at any time" Plaintiff "would develop an extensive and thorough research package" is vague and ambiguous and therefore denied.

41.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 41 of the Complaint.

42.     Admitted in part, denied in part.  Defendants admit that Plaintiff's employment with MIS was terminated on December 12, 2007.  The remaining allegations of paragraph 42 of the Complaint are denied.

43.     Denied.

44.     Admitted in part, denied in part.  Defendants admit that Plaintiff made a complaint to Moody's Compliance Department.  The remaining allegations of paragraph 44 of the Complaint are denied.

45.     Denied.

46.     Admitted.

47.     Admitted.

48.      Admitted in part, denied in part.  Defendants admit that Plaintiff convened a credit rating committee meeting on December 4, 2007 (the "December 2007 Meeting"), to discuss the corporate family rating of Express Scripts, Inc. ("Express Scripts").  Defendants admit further that Plaintiff recommended in that meeting that Express Scripts' corporate family rating be upgraded from Ba1 (a speculative grade rating) to Baa3 (an investment grade rating).  Defendants admit further that a credit rating committee meeting regarding Express Scripts had occurred in October 2007.  The remaining allegations of this paragraph are denied.

49.      The allegations of this paragraph regarding how many credit rating committee meetings Plaintiff "attended, participated and orchestrated" are vague and ambiguous and therefore denied.  Defendants are without knowledge or information sufficient to form a belief regarding Plaintiff's "awareness" of practices and procedures for the conduct of credit rating committee meetings, as alleged in paragraph 49 of the Complaint.

50.      Admitted in part, denied in part.  Defendants admit that, at the December 2007 Meeting, Plaintiff provided written materials to attendees that he prepared in support of his recommendation to upgrade Express Scripts' corporate family rating from speculative grade to investment grade.  The remaining allegations of this paragraph are denied.

51.      Defendants admit that Team Managing Director Patrick Finnegan ("Finnegan") instructed Plaintiff to invite Group Managing Director Tom Marshella and Chief Credit Officer Daniel Gates to attend the December 2007 Meeting.  To the extent the allegations of this paragraph are inconsistent with this statement, they are denied.

52.      Admitted.

53.      Defendants admit that Finnegan chaired the December 2007 Meeting and that Finnegan was Plaintiff's direct supervisor.  The allegation that Finnegan chaired the December

2007 Meeting "[d]ue to the unavailability of Gates and Marshella" is speculative and therefore denied.

54.     Defendants admit that the December 2007 Meeting was attended by Finnegan, five analysts (including Plaintiff), and one associate analyst.  Defendants admit further that all analysts attending the December 2007 Meeting reported to Finnegan.  To the extent the allegations of this paragraph are inconsistent with these statements, they are denied.

55.     Denied.

56.     Admitted in part, denied in part.  Defendants admit that the December 2007 Meeting began at or around 2:00 p.m.  The remaining allegations of this paragraph are denied.

57.     Denied.

58.     Defendants admit that, initially, after Plaintiff's presentation during the December 2007 Meeting, five attendees voted "for" the proposed upgrade (Plaintiff, three other analysts, and the associate analyst) and two voted "against" the proposed upgrade (Finnegan and one analyst).  By way of further response, Defendants aver that, while associate analysts are permitted to vote during credit rating committee meetings, their votes are not considered when determining whether to accept the recommended rating change or affirmation.

59.     Admitted.

60.     Admitted.

61.     Defendants admit that Finnegan voted against upgrading Express Scripts' corporate family rating.  Defendants further aver that, in December 2007, Standard & Poor's and Fitch's ratings of Express Scripts were BBB.  To the extent the allegations of this paragraph are inconsistent with these statements, they are denied.

62.      Defendants admit that, at the December 2007 Meeting, Finnegan expressed his view that Express Scripts' corporate family rating outlook be lowered from positive to stable. To the extent the allegations of this paragraph are inconsistent with this statement, they are denied.

63.      Denied.

64.      Admitted.

65.      Denied.

66.      Defendants admit that, when Finnegan voted against upgrading Express Scripts' corporate family rating, he also stated that (if the committee voted to upgrade) he would appeal the committee's decision to Chief Credit Officer Daniel Gates.  In response, several analysts present asked Finnegan about his concerns with the proposed upgrade.  To the extent the allegations of this paragraph are inconsistent with these statements, they are denied.

67.      Denied.

68.      Defendants admit that, during the December 2007 Meeting, Finnegan stated that, based on the information presented, Express Scripts' corporate family rating did not warrant an upgrade.  To the extent the allegations of this paragraph are inconsistent with this statement, they are denied.

69.      Defendants admit that, during the December 2007 Meeting, Finnegan was asked what (if any) debt instruments issued by Express Scripts were rated by MIS, to which Finnegan accurately responded that Express Scripts had not retained MIS to rate any of its issues. Defendants admit further that, during the December 2007 Meeting, Finnegan expressed concern that Express Scripts had not met with or visited anyone at MIS since December 2006. Defendants admit that, during the December 2007 Meeting, Finnegan stated that, based on the

information presented, Express Scripts' corporate family rating did not warrant an upgrade.   To the extent the allegations of this paragraph are inconsistent with these statements, they are denied.

70.        Denied.

71.        Admitted in part, denied in part.  Defendants admit that Express Scripts met with MIS in June 2005 and December 2006.  The remaining allegations of paragraph 71 of the Complaint are denied.

72.        Admitted in part, denied in part.  Defendants admit that, during the December 2007 Meeting, Finnegan expressed concern that Express Scripts had not visited MIS to present the case for their corporate family rating to be upgraded.  The remaining allegations of paragraph 72 of the Complaint are denied.

73.        Denied.

74.        Admitted in part, denied in part.  Defendants admit that, prior to the December 2007 Meeting, MIS had invited Express Scripts to visit MIS and present the case for their corporate family rating to be upgraded, but Express Scripts replied that they would be unable to do so until some indeterminate time in the future.  The remaining allegations of paragraph 74 of the Complaint are denied.

75.        The allegations of paragraph 75 of the Complaint are speculative and are therefore denied.

76.        Denied.

77.        Admitted in part, denied in part.  Defendants admit that, during the December 2007 Meeting, the analysts (except Plaintiff) who had initially voted "for" an upgrade of Express Scripts' corporate family rating decided to change their votes to "against" such an upgrade.  To

the extent the allegations of this paragraph are inconsistent with this statement, they are denied.
The remaining allegations of paragraph 77 of the Complaint are denied.

78.        Defendants admit that, by the end of the December 2007 Meeting, Plaintiff
was the only analyst who voted "for" upgrading Express Scripts' rating.  To the extent the
allegations of this paragraph are inconsistent with this statement, they are denied.

79.        Admitted in part, denied in part.  Defendants admit that Michael Levesque had
to leave the December 2007 Meeting before its conclusion, and so wrote down his vote because
he would not be physically present to cast his vote by show of hands.  The remaining allegations
of paragraph 79 of the Complaint are denied.

80.        Denied.

81.        Defendants admit that the attendees of the December 2007 Meeting, with the
exceptions of Plaintiff and Finnegan, ultimately voted to maintain Express Scripts' then-current
corporate family rating and outlook.  Defendants admit further that Finnegan voted to maintain
Express Scripts' corporate family rating and downgrade its outlook from positive to stable.  To
the extent the allegations of this paragraph are inconsistent with these statements, they are
denied.

82.        Denied.

83.        The allegations of this paragraph constitute conclusions of law to which no
responsive pleading is required.  Insofar as a responsive pleading is required, the allegations of
this paragraph are denied.

84.        Denied.

85.        Defendants admit that, in or around June 2005, Finnegan informed Express
Scripts that it (Express Scripts) had not provided MIS with certain information pertinent to, and

that would be helpful during, the ratings assessment process. To the extent that the allegations of this paragraph are inconsistent with this statement, they are denied.

86.     Defendants admit that, during the December 2007 Meeting, Finnegan expressed his concern that Express Scripts had not met with or visited anyone at MIS since December 2006 and had not visited MIS to present the case for their corporate family rating to be upgraded. To the extent that the allegations of this paragraph are inconsistent with this statement, they are denied.

87.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 87 of the Complaint regarding Plaintiff's state of mind. The remaining allegations of this paragraph are denied.

88.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 88 of the Complaint regarding Plaintiff's experience before his employment with MIS. Defendants deny any implication that the December 2007 Meeting constituted "a flip-flop and strong-arm reversal by a Rating Committee chair forcing a revote without any precedent or justification," as alleged in this paragraph.

89.     Denied.

90.     Admitted in part, denied in part. Defendants admit that Plaintiff complained to Scott McCleskey, Senior Vice President-Compliance at Moody's, about the December 2007 Meeting. The remaining allegations of paragraph 90 of the Complaint are denied.

91.     To the extent that paragraph 91 of the Complaint refers to documents, those documents speak for themselves. To the extent that the allegations of paragraph 91 misconstrue, mischaracterize, or misstate the content of those documents, they are denied.

92.     Defendants admit that on December 5, 2007, Plaintiff complained to Scott McCleskey about the December 2007 Meeting.  To the extent the allegations of this paragraph are inconsistent with this statement, they are denied.

93.     Admitted in part, denied in part.  Defendants admit that McCleskey took notes during his conversation with Plaintiff.  The remaining allegations of paragraph 93 of the Complaint are denied.

94.     Admitted in part, denied in part.  Defendants admit that McCleskey referred Plaintiff's complaint to Vice President of Compliance Gail Weiss, who spoke with Plaintiff on December 5, 2007.  The remaining allegations of paragraph 94 of the Complaint are denied.

95.     Admitted in part, denied in part.  Defendants admit that, on December 5, 2007, Weiss interviewed Plaintiff by phone regarding his complaint to McCleskey about the December 2007 Meeting.  The remaining allegations of paragraph 95 of the Complaint are denied.

96.     Defendants admit that, on December 19, 2007, Weiss wrote to Plaintiff (through his counsel) and asked if Plaintiff would meet with her to further discuss his claims, but neither Plaintiff nor his counsel responded until January 21, 2008, after Weiss's investigation was concluded.  To the extent the allegations of this paragraph are inconsistent with this statement, they are denied.

97.     To the extent that paragraph 97 of the Complaint refers to documents, those documents speak for themselves.  To the extent that the allegations of paragraph 97 misconstrue, mischaracterize, or misstate the content of those documents, they are denied.  Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 97 of the Complaint regarding Plaintiff's state of mind.

98.         Defendants admit that Plaintiff's employment with MIS was terminated on December 12, 2007. To the extent the allegations of this paragraph are inconsistent with this statement, they are denied.

99.         Denied.

100.        Denied.

101.        Denied.

102.        Defendants deny that Plaintiff's complaint was "legitimate" or that it was not "addressed in a timely, systematic and thorough fashion." Defendants further deny that Finnegan was not "acting within the law, industry practice and/or the company's guidelines."

103.        Denied.

104.        Denied.

105.        Denied.

106.        Denied.

107.        To the extent that paragraph 107 of the Complaint refers to documents, those documents speak for themselves. To the extent that the allegations of paragraph 107 misconstrue, mischaracterize, or misstate the content of those documents, they are denied.

108.        To the extent that paragraph 108 of the Complaint refers to documents, those documents speak for themselves. To the extent that the allegations of paragraph 108 misconstrue, mischaracterize, or misstate the content of those documents, they are denied.

109.        Admitted in part, denied in part. Defendants admit that Plaintiff received a 3% salary increase in or around July 2007. The remaining allegations of paragraph 109 of the Complaint are denied.

110.    To the extent that paragraph 110 of the Complaint refers to documents, those documents speak for themselves.  To the extent that the allegations of paragraph 110 misconstrue, mischaracterize, or misstate the content of those documents, they are denied.

111.    Denied.

112.    Denied.

113.    The allegations of paragraph 113 of the Complaint regarding compensation that may have been provided to Plaintiff had his employment not been terminated are speculative and are therefore denied.  By way of further response, Defendants aver that Plaintiff was at all times fully compensated in accordance with applicable compensation policies.

114.    The allegations of paragraph 114 of the Complaint regarding compensation that may have been provided to Plaintiff had his employment not been terminated are speculative and are therefore denied.  By way of further response, Defendants aver that Plaintiff was at all times fully compensated in accordance with applicable compensation policies.

115.    The allegations of paragraph 115 of the Complaint regarding compensation that may have been provided to Plaintiff had his employment not been terminated are speculative and are therefore denied.  By way of further response, Defendants aver that Plaintiff was at all times fully compensated in accordance with applicable compensation policies.

116.    The allegations of paragraph 116 of the Complaint regarding compensation that may have been provided to Plaintiff had his employment not been terminated are speculative and are therefore denied.  By way of further response, Defendants aver that Plaintiff was at all times fully compensated in accordance with applicable compensation policies.

117.    Denied.

118.    Denied.

119.    Denied.

120.    Denied.

121.    Denied.

122.    Admitted in part, denied in part.  Defendants admit that MIS withdrew its corporate family rating of Express Scripts on May 2, 2008.  The remaining allegations of paragraph 122 of the Complaint are denied.

123.    Denied.

124.    Defendants admit that Standard & Poor's and Fitch's current ratings of Express Scripts are BBB.  To the extent the allegations of this paragraph are inconsistent with this statement, they are denied.

125.    Admitted.

126.    Defendants admit that Bienstock's complaint to OSHA was filed within 90 days of his termination from MIS.  To the extent the allegations of this paragraph are inconsistent with this statement, they are denied.

127.    Defendants admit that over 180 days elapsed between Bienstock's submission of his complaint to OSHA and filing of this action.  The remaining allegations of this paragraph constitute conclusions of law to which no responsive pleading is required.

## CLAIMS AND DAMAGES

128.     The allegations of this paragraph constitute conclusions of law to which no responsive pleading is required.  Insofar as a responsive pleading is required, Defendants admit that Plaintiff purports to bring a retaliatory termination claim under the Sarbanes-Oxley Act of 2002 ("SOX").  Defendants specifically deny that Plaintiff is entitled to any relief under SOX.

129.     Defendants incorporate by reference their responses to the allegations contained in paragraphs 1 through 128 of Plaintiff's Complaint, as if such responses were fully set forth herein.

130.     The allegations of this paragraph constitute conclusions of law to which no responsive pleading is required.

131.     Defendants admit that Plaintiff was employed by MIS.  The remaining allegations of this paragraph constitute conclusions of law to which no responsive pleading is required.

132.     Denied.

133.     Denied.

134.     Denied.

135.     Denied.

136.     Denied.

137.     Denied.

138.     Denied.

139.     Denied.

Defendants deny that Plaintiff is entitled to any of the relief sought in the Complaint, including the remedies and relief requested in the "REQUEST FOR RELIEF" section of the Complaint.

### FIRST SEPARATE DEFENSE

Plaintiff's Complaint fails, in whole or part, to state a claim upon which relief may be granted.

### SECOND SEPARATE DEFENSE

Plaintiff's Complaint is barred, in whole or part, by the applicable statutes of limitations.

### THIRD SEPARATE DEFENSE

Plaintiff's Complaint is barred insofar as Plaintiff has failed to mitigate his damages, if any.

### FOURTH SEPARATE DEFENSE

Each and every action taken by Defendants with regard to Plaintiff's employment was based on legitimate and non-retaliatory business reasons.

### FIFTH SEPARATE DEFENSE

Plaintiff did not engage in any protected activity under SOX.

### SIXTH SEPARATE DEFENSE

Even if Plaintiff could establish that he engaged in protected activity under SOX, such activity was not considered when Plaintiff's employment with MIS was terminated, as the decision to terminate Plaintiff's employment predated the alleged protected activity.

### SEVENTH SEPARATE DEFENSE

Even if Plaintiff could establish that he engaged in protected activity under SOX, and even if Plaintiff could establish that Defendants considered such activity when deciding to

terminate his employment – which did not occur and which, therefore, Plaintiff cannot prove – Plaintiff still would have been terminated for legitimate and non-retaliatory reasons (*i.e.*, poor performance).

## EIGHTH SEPARATE DEFENSE

Defendant Moody's Investors Service, Inc., is not a covered entity under SOX.

## NINTH SEPARATE DEFENSE

Defendants' good faith compliance with law precludes Plaintiff from recovering punitive damages.

## TENTH SEPARATE DEFENSE

Plaintiff's claims are frivolous, unreasonable, and groundless and, accordingly, Defendants should recover all costs and attorneys' fees incurred herein.

## RESERVATION OF RIGHTS

Defendants reserve the right to assert additional defenses as discovery reveals further information or as Plaintiff's claims are clarified.

**WHEREFORE**, Defendants respectfully request:

1.      That Plaintiff takes nothing by this action;

2.      That judgment be entered in favor of Defendants and against Plaintiff on all causes of action;

3.      That Defendants be awarded their costs of suit herein incurred;

4.      That Defendants be awarded their attorneys' fees; and

5.      That the Court award Defendants such other and further relief as it deems proper.

Respectfully submitted,

MORGAN, LEWIS & BOCKIUS LLP
Attorneys for Defendants
Moody's Investors Service, Inc., and
Moody's Corporation

s/Joseph A. Nuccio
René M. Johnson
Dated:  January 11, 2010          Joseph A. Nuccio