UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PAUL BIENSTOCK,<br><br>　　　　　Plaintiff,<br><br>　　　　　v.<br><br>MOODY'S INVESTORS SERVICES and MOODY'S CORPORATION,<br><br>　　　　　Defendants. | Civil Action No. 09-2858 (SHS-RLE)<br><br><br>*ELECTRONICALLY FILED* |

**DEFENDANTS MOODY'S INVESTORS SERVICES AND MOODY'S CORPORATION'S MEMORANDUM OF LAW IN SUPPORT OF ITS <u>MOTION FOR SUMMARY JUDGMENT PURSUANT TO RULE 56(c)</u>**

Rene M. Johnson
Joseph A. Nuccio
**MORGAN, LEWIS & BOCKIUS LLP**
**(Pennsylvania Limited Liability Partnership)**
**502 Carnegie Center**
**Princeton, NJ  08540-6241**
**609.919.6600 / 6701 (fax)**
**Attorneys for Defendants**

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ..................................................................................................1

STATEMENT OF FACTS ............................................................................................................1

ARGUMENT..................................................................................................................................3

      I.      The Standard Of Review...........................................................................................3

      II.     Plaintiff Cannot Establish A Prima Facie Case For Retaliatory Discharge...........4

      III.    MIS Had Legitimate, Non-Discriminatory Business Reasons For Including Plaintiff In The December 2007 RIF ......................................................................7

CONCLUSION...............................................................................................................................9

## TABLE OF AUTHORITIES

## FEDERAL CASES

Anderson v. Liberty Lobby, Inc.,
477 U.S. 242 (1986)..................................................................................................................4

Celotex Corp. v. Catrett,
477 U.S. 317 (1986)..................................................................................................................3

Competitive Tech., Inc. v. Bechtel,
2009 WL 1939804 (D. Conn. Jul. 6, 2009) ..............................................................................7

Fraser v. Fiduciary Trust Co. Int'l,
2009 WL 2601389 (S.D.N.Y. Aug. 25, 2009)..........................................................................4

Gattegano v. Administrative Review Board,
353 Fed. Appx. 498 (2d Cir. 2009).......................................................................................4, 5

Getman v. Administrative Review Board,
265 Fed. Appx. 317 (5th Cir. 2008)..........................................................................................5

Griffin v. Ambika Corp.,
103 F. Supp. 2d 297 (S.D.N.Y. 2000)...................................................................................6, 8

Harp v. Charter Communications, Inc.,
558 F.3d 722 (7th Cir. 2009) ....................................................................................................7

Hill v. Rayboy-Brauestein,
467 F. Supp. 2d 336 (S.D.N.Y. 2006).......................................................................................4

Lediju v. New York City Dep't of Sanitation,
173 F.R.D. 105 (S.D.N.Y. 1997) ..............................................................................................4

Mahony v. Keyspan Corp.,
2007 WL 805813 (E.D.N.Y. Mar. 12, 2007)............................................................................7

Marano v. Dep't of Justice,
2 F.3d 1137 (Fed. Cir. 1993).....................................................................................................6

Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,
475 U.S. 574 (1986)..................................................................................................................4

Maturine v. American Int'l Group, Inc.,
2006 WL 3206098 (S.D.N.Y. Nov. 6, 2006)............................................................................4

Pardy v. Gray,
2008 WL 2756331 (S.D.N.Y. July 15, 2008) ...............................................................5, 7

Ricks v. Conde Nast Publ'ns, Inc.,
92 F. Supp. 2d 338 (S.D.N.Y. 2000) ................................................................................7

Romaneck v. Deutsche Asset Mgmt.,
2006 WL 2385237 (N.D. Cal. Aug. 17, 2006) ................................................................7

W. World Ins. Co. v. Stack Oil, Inc.,
922 F.2d 118 (2d Cir. 1990) .............................................................................................4

## ADMINISTRATIVE DECISIONS

Brookman v. Levi Strauss & Co.,
ALJ Case No. 2006-SOX-36 (Apr. 27, 2007) .................................................................6

Robinson v. Morgan Stanley,
ALJ Case No. 2005-SOX-44 (Mar. 26, 2007) .................................................................6

## FEDERAL RULES

Fed. R. Civ. P. 56(c) .................................................................................................................3

Fed. R. Civ. P. 56(e) .................................................................................................................4

Defendants Moody's Investor Services ("MIS") and Moody's Corporation ("Moody's"), by and through their counsel, Morgan, Lewis & Bockius LLP, hereby submit, pursuant to Rule of Civ. P. 56(c), the following Memorandum of Law in Support of their Motion for Summary Judgment.

## PRELIMINARY STATEMENT

Plaintiff Paul Bienstock was one of several financial analysts impacted by a reduction in force ("RIF") in the fall of 2007. Plaintiff was selected for inclusion in the RIF on November 28, 2007, and the decision was communicated to his manager on November 30, 2007. Plaintiff contends that he was selected for termination not because of his documented performance problems, but because he engaged in whistleblowing activity[1] on December 5, 2007 – a week after he was selected for the RIF. However, it is undisputed that Plaintiff was selected for the RIF, and that the RIF decisions were finalized, well <u>before</u> he engaged in <u>any</u> protected activity. Therefore, Plaintiff cannot show that his termination was in any way motivated by impermissible considerations. Because Plaintiff's termination is entirely unrelated to any allegedly protected conduct, summary judgment is appropriate.

## STATEMENT OF FACTS

Plaintiff was employed by MIS as an analyst primarily focused on various healthcare-related companies, and was responsible for, among other things, preparing recommendations as to how MIS rated the financial soundness of those companies.[2] <u>See</u> Defendant's Rule 56.1

---

[1] As discussed at length in Defendants' May 2009 Motion to Dismiss, MIS and Moody's dispute that Plaintiff's conduct was protected under the Sarbanes-Oxley Act ("SOX") or any other statute. However, for purposes of this Motion, Defendants will treat Plaintiff as having engaged in reporting activity protected under SOX.

[2] Defendants additionally rely on their statement of Undisputed Material Facts In Support of Their Motion For Summary Judgment ("R. 56.1 Stmt.") filed separately as required under Local Civil Rule 56.1

DB1/62927824.4

Statement of Undisputed Material Facts ("R. 56.1 Stmt.") at ¶¶ 1, 2. Late 2007 was a difficult period for many financial sector companies, MIS included. Id. at ¶¶ 10, 11. Michael Rowan, Senior Managing Director of the MIS Corporate Finance Group for whom Plaintiff worked, needed to lay off some employees in his group. Id. at ¶ 12. In October 2007, Mr. Rowan prepared comparative performance rankings of all employees holding certain positions within the Corporate Finance Group, including the VP-Senior Analyst position held by Plaintiff. Id. at ¶ 14. By this time Plaintiff had received multiple mediocre annual reviews that specifically cited his poor communication skills and written work product, along with his repeated tendency to appear asleep in meetings with clients.[3] Id. at ¶¶ 5, 6. Not surprisingly, Plaintiff was ranked dead last out of all his North American peers, and thirty-second of thirty three including all analysts in the Corporate Finance Group North America, South America and Central America. Id. at ¶ 15. Plaintiff concedes he has no evidence that he was ranked higher than, or performed better than, any of his peers. See id. at ¶ 29. In November 2007, Mr. Rowan reviewed the October 2007 performance rankings and selected seven employees for a RIF. Id. at ¶¶ 16, 17. Plaintiff was one of the employees selected for termination. Id. The final RIF selection was made on November 28, 2007 and communicated to Plaintiff's manager on November 30, 2007. Id. at ¶¶ 16, 18.

Only after Mr. Rowan finalized his RIF selections did Plaintiff engage for the first time in what he claims was SOX-protected whistleblowing. See id. at ¶¶ 21-24. Plaintiff's first and only allegedly protected activity took place on December 5, 2007, when he made a report to MIS Compliance regarding allegedly inappropriate behavior by Mr. Finnegan during a December 4, 2007 Rating Committee meeting. Id. Plaintiff alleges that he believed Mr. Finnegan's conduct

---

[3] Plaintiff did not dispute these reviews at the time he received them, and, in fact, prior to December 4, 2007, Plaintiff had no complaints about his supervisor, Mr. Patrick Finnegan. Id. at ¶¶ 7-9, 27-28.

2

violated company policy and, possibly, securities regulations.  Id.  Plaintiff had never before complained about Mr. Finnegan's conduct at any Rating Committee meeting.  Id. at ¶ 27.  Plaintiff admits that he does not know when his termination decision was made or if it predated his reporting activity.  Id. at ¶ 28.  He also concedes he has no evidence – only his own supposition – to link his report to his termination.  Id. at ¶ 30.  On December 12, 2007, the seven employees selected in November for the Corporate Finance Group RIF, including Plaintiff, were terminated.  Id. at ¶ 20.  Plaintiff now claims that his termination was a direct result of his alleged whistleblowing, but has no evidence to support this assertion.

## ARGUMENT

### I.     The Standard Of Review

Summary judgment should be granted where "the pleadings, depositions . . . [and] affidavits . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Summary judgment provides a procedure whereby determinations can be made without recourse to a costly, lengthy and unnecessary trial:

> [s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to "to secure the just, speedy and inexpensive determination of every action."

Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).

To carry its initial burden, the moving party must show that "there is an absence of evidence to support the nonmoving party's case."  Id. at 325.  A moving party need only show the absence of proof of any of the essential elements of the non-movant's case.  Id. at 323.  Once a properly supported motion for summary judgment has been made, the burden shifts to the

3

nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). Thus, to withstand the motion, the nonmovant must do more than present evidence that is merely colorable, conclusory or speculative; it must present "concrete evidence from which a reasonable [fact-finder] would return a verdict in [its] favor." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); W. World Ins. Co. v. Stack Oil, Inc., 922 F.2d 118, 121 (2d Cir. 1990) (nonmoving party "cannot escape summary judgment merely by vaguely asserting the existence of some unspecified disputed material facts, or defeat the motion through mere speculation or conjecture"); Maturine v. American Int'l Group, Inc., No. 1:04 cv 9064, 2006 WL 3206098, at *4 (Daniels, J.) (S.D.N.Y. Nov. 6, 2006); Hill v. Rayboy-Brauestein, 467 F. Supp. 2d 336, 350 (S.D.N.Y 2006); Lediju v. New York City Dep't of Sanitation, 173 F.R.D. 105, 114 (S.D.N.Y. 1997). In the end, the nonmovant must do more than show "some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

## II.   Plaintiff Cannot Establish A Prima Facie Case For Retaliatory Discharge

The law is clear that to make a prima facie showing of retaliation for SOX whistleblowing, a plaintiff must adduce evidence that: (1) he engaged in a protected activity or conduct; (2) the employer knew or suspected, actually or constructively, that he engaged in the protected activity; (3) he suffered an unfavorable personnel action; and (4) "[t]he circumstances were sufficient to raise the inference that the protected activity was a contributing factor in the unfavorable action." Gattegano v. Administrative Review Board, 353 Fed. Appx. 498, 500 (2nd Cir. 2009) (citing 29 C.F.R. 1980.104(b)(1)). Plaintiff must do so by a preponderance of the evidence. Fraser v. Fiduciary Trust Co. Int'l, 2009 WL 2601389 at *4 (S.D.N.Y. Aug. 25, 2009). Plaintiff cannot satisfy either the second or fourth prongs. Michael Rowan could not

4

have known of Plaintiff's reporting activity when he decided to terminate Plaintiff, and the activity was not a contributing factor in that decision.

There is no evidence that, at the time the RIF decision was made, MIS "knew or suspected, actually or constructively" that Plaintiff engaged in protected conduct. It is literally impossible for Mr. Rowan to have known about any protected conduct, as the termination decision was made a week before any such conduct even occurred. R. 56.1 Stmt. at ¶¶ 18, 19, 21-24. Indeed, the undisputed evidence is that Michael Rowan had no knowledge of Plaintiff's complaint when he made the decision on November 28, 2008 to include Plaintiff in the RIF. Id. at ¶ 19. Plaintiff admits that he has no evidence to the contrary, as he does not know who decided to include him in the RIF or when the decision was made. Id. at ¶¶ 28, 30. Notably, Plaintiff did not depose Mr. Rowan or offer any evidence to rebut Mr. Rowan's sworn affidavit confirming that Plaintiff's selection for inclusion in the RIF was finalized in November 2007, before the allegedly protected conduct took place in December. Id. at ¶¶ at 18, 24. Plaintiff's stated basis for his claim is wholly conclusory: the "sequence between reporting [to Compliance] and [his] termination." Bienstock Dep. at 164. This speculation falls far short of the necessary showing that "the employer knew or suspected… the protected activity" and cannot overcome the undisputed factual record. Gattegano, 353 Fed. Appx. at 500.

Plaintiff also fails the fourth Gattegano prong. Even if an employee engaged in protected activity under SOX, that employee's subsequent termination will be unlawful only when the complainant's protected activity was a "contributing factor" in the termination. Getman v. Administrative Review Bd., 265 Fed. Appx. 317, 319 (5th Cir. Feb. 13, 2008). In this context, "the words 'a contributing factor' mean any factor, which alone or in combination with other factors, tends to affect in any way the outcome of the decision." Pardy v. Gray, 2008 WL

5

2756331 at *5 (S.D.N.Y. July 15, 2008) (quoting Marano v. Dep't of Justice, 2 F.3d 1137, 1140 (Fed. Cir. 1993)). Just as an event that has not yet occurred cannot be known to an employer, judges have reached the logical conclusion that protected activity that occurs *after* an adverse employment decision cannot constitute a contributing factor in that decision. See Brookman v. Levi Strauss & Co., ALJ Case No. 2006-SOX-36, at 15 (Apr. 27, 2007) (finding no retaliation under SOX because, inter alia, termination decision was made before claimant's complaint to SEC); Robinson v. Morgan Stanley, ALJ Case No. 2005-SOX-44, at 123-124 (Mar. 26, 2007) (noting that "of particular significance on the causation issue, none of the adverse performance evaluations and personnel actions by [claimant's supervisors] … were motivated by [claimant's] subsequent protected activity") (emphasis in original).

Plaintiff has no evidence whatsoever that his reporting was a contributing factor in the termination, or that his reporting accelerated the date of his termination. The undisputed testimony is that the termination decision was communicated to Plaintiff's manager five days before Plaintiff made the report to Compliance, so as a matter of law there can be no causal connection between Plaintiff's complaint and his termination. Contrary to Plaintiff's assertions in his pre-motion letter, Plaintiff was terminated on the same day as his coworkers who were also selected for the RIF, no sooner than he would have been absent his alleged whistleblowing. See R. 56.1 Stmt. at ¶¶ 22, 31. For these straightforward reasons, summary judgment on Plaintiff's claim for retaliatory discharge is warranted. See Griffin v. Ambika Corp., 103 F. Supp. 2d 297, 312 (S.D.N.Y. 2000) (granting summary judgment because plaintiffs failed to establish a causal connection between their protected activity and suspension where employer demonstrated it was taking steps to terminate plaintiffs based on complaints against them by other employees before plaintiffs engaged in protected activity); Ricks v. Conde Nast Publ'ns, Inc., 92 F. Supp. 2d 338,

6

347 (S.D.N.Y. 2000) (granting summary judgment because "the temporal sequence of this case cannot give rise to an inference that [plaintiff's] firing was caused by her complaints" where employer submitted evidence that it was taking steps towards plaintiff's termination prior to her engaging in protected activity); Romaneck v. Deutsche Asset Mgmt., No. 05-2473, 2006 WL 2385237, *4, *6 (N.D. Cal. Aug. 17, 2006).

### III. MIS Had Legitimate, Non-Discriminatory Business Reasons For Including Plaintiff In The December 2007 RIF

Even assuming Plaintiff could establish a prima facie case of retaliation, which he cannot, summary judgment is appropriate because Plaintiff was selected for termination for a legitimate, non-retaliatory business reason. In a SOX action, "an employer can defeat the claim by demonstrating with clear and convincing evidence that it 'would have taken the same unfavorable personnel action in the absence of [protected] behavior.'" Mahoney v. Keyspan Corp., 2007 WL 805813 at * 7 (E.D.N.Y. March 12, 2007); see also Pardy, supra at *6 (holding summary judgment appropriate when, even if employee establishes a prima facie case for SOX whistleblowing, employer demonstrates that "it would have fired Plaintiff even in the absence" of the reporting); Harp v. Charter Communications, Inc., 558 F.3d 722, 724 (7th Cir. 2009) (plaintiff unable to overcome clear and convincing evidence that her termination was prompted by a departmental RIF in response to company's financial and budgetary concerns); Competitive Tech., Inc. v. Bechtel, 2009 WL 1939804 at *1 (D. Conn. Jul. 6, 2009) (clear and convincing evidence shown when employer demonstrated it laid off three employees, including Plaintiff, due to financial difficulties).

The undisputed evidence is that Plaintiff was selected by Senior Managing Director Michael Rowan for termination from MIS for one simple reason: his performance relative to his

7

peers. R. 56.1 Stmt. at ¶ 17. Plaintiff has offered no evidence to contradict the Rowan affidavit; thus it must be accepted as true. Plaintiff was ranked thirty-second out of thirty three VP-Senior Analysts, making him the lowest ranked in North America. Id. at ¶ 15. He and other low-ranked analysts were selected for the RIF based only on their performance. Id. at ¶ 17. Plaintiff concedes that no protected activity occurred until after his performance reviews, so there can be no claim that his reviews were biased. Id. at ¶¶ 6, 23. In fact, Plaintiff has offered nothing to refute these evaluations or demonstrate that he actually performed any better than any of his peers.[4] Plaintiff does not know how his performance or his evaluations compare to his peers, and thus has no grounds to challenge the comparative ranking. Id. at ¶ 29.

No evidence exists that these performance concerns were not the true reason for Plaintiff's termination, or that Plaintiff's Compliance reporting was the real reason for his termination. As there exists no evidence contrary to MIS' clearly articulated position, concluding that Plaintiff's termination was retaliatory would require "guesswork or theorizing, which do not amount to permissible inferences in Title VII or any other cases." Griffin, supra at 311 (citation omitted). Plaintiff lacks any evidence that MIS' performance evaluation and comparative rankings were influenced by the compliance reporting or any animus on the part of management, so he can make no argument that the reasons given are merely pretextual.

---

[4] Tellingly, Plaintiff did not dispute his performance reviews at the time he received them. R. 56.1 Stmt. at ¶ 7.

## **CONCLUSION**

For all of the foregoing reasons, Defendants MIS and Moody's respectfully request that this Court grant summary judgment dismissing Plaintiff's Complaint in its entirety.

Respectfully submitted,

**Morgan, Lewis & Bockius LLP**
Attorneys for Moody's Investors Service, Inc., and Moody's Corporation


s/ Joseph A. Nuccio
René M. Johnson
Joseph A. Nuccio

Dated:  July 30, 2010